IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. CAHUICHCHII

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
MARIO A. CAHUICHCHII, APPELLANT.

Filed January 13, 2015.    No. A-13-1117.

Appeal from the District Court for Sarpy County: WILLIAM B. ZASTERA, Judge. Affirmed.

Patrick J. Boylan, Chief Deputy Sarpy County Public Defender, for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

IRWIN, INBODY, and PIRTLE, Judges.

PIRTLE, Judge.

## INTRODUCTION

Mario A. Cahuichchii appeals his convictions in the district court for Sarpy County for third degree assault on an officer and resisting arrest. He challenges the court's refusal to give his proposed jury instructions regarding self-defense and the use of force by a police officer when making an arrest, and he argues that the evidence was insufficient to convict him of the charges. Having found no merit to his assignments of error, we affirm.

## BACKGROUND

The State filed an information charging Cahuichchii with third degree assault on an officer, obstructing a peace officer, and resisting arrest. The obstructing a peace officer charge was dismissed by the State. Cahuichchii pled not guilty to the remaining two charges, and a jury trial was held.

- 1 -

The evidence presented by the State at trial was as follows: Bellevue police officers Jordan Filippi and Chad Heller, a police dog handler, were on duty on May 8, 2013, when they were dispatched to a vacant apartment building in Bellevue regarding a burglary in progress. Filippi and Heller, along with Heller's police dog, arrived at the scene in separate vehicles within minutes of the call. Heller spoke with the individual who had reported the burglary, and while they were talking, the individual saw the suspect and pointed out where he was located. Filippi and Heller took off running behind the garages of the apartment building where there was an open field with a fence. Bellevue police officer Brian Benshoof arrived at the scene about this time and joined Filippi and Heller. When the officers got behind the garages, they observed a man crouched down low to the ground next to the fence. He was wearing dark clothes, which matched the description of the suspect the officers had received from dispatch. The man was later identified as Cahuichchii.

Cahuichchii looked at the officers, and then looked to his right and left, leading the officers to believe that he was looking for a way to escape. Filippi and Benshoof testified that they could not see Cahuichchii's hands, because he had them in the waist of his pants or in front of him in his waist area. Heller testified that when he arrived, he could see Cahuichchii's left hand near his waistband, but could not see his right hand. The officers testified that not being able to see both of Cahuichchii's hands and/or his having them near his waistband was a safety concern for the officers because they were uncertain if he had a weapon and individuals commonly keep weapons in the waistband on their pants. Based on the safety concern, Filippi and Heller both had their guns drawn but did not have them pointed at Cahuichchii.

Filippi and Heller repeatedly commanded Cahuichchii in both Spanish and English to show his hands or to put his hands up. Cahuichchii did not comply with the officers' commands. The only response he gave was "por que," which is Spanish for "why" or "for what." Benshoof told Cahuichchii that if he did not comply, that a "Taser" would be used. Cahuichchii did not comply with the officers' requests to show his hands, and Benshoof deployed the Taser. Cahuichchii was immobilized by the Taser and fell to the ground, landing on his back.

Filippi testified that the Taser was used to try to get Cahuichchii to comply, rather than a hands-on approach, because the officers did not know if he was armed. Benshoof testified the Taser was the most effective way to maintain officer safety and limit any injury to Cahuichchii at that time.

Filippi testified that after the Taser was deployed and Cahuichchii fell to the ground, he told Cahuichchii to roll over onto his stomach so he could be handcuffed. Filippi directed him to do so in both English and Spanish. Cahuichchii again did not comply. Cahuichchii sat up, and as he was trying to stand up, Filippi was able to handcuff his left hand. Cahuichchii began pulling away and tried to stand up again. Filippi pulled him back down and tried to roll him over onto his stomach so he could get his other hand in the handcuffs. Filippi was directing Cahuichchii to give him his hand, but he was noncompliant. Heller tried to grab Cahuichchii's right hand, but he was lying on his right side with his right hand underneath him and was actively fighting and trying to pull away. At some point during the encounter, Filippi struck Cahuichchii twice in the ribs with his knee in an effort to get him to comply with the officers' commands.

While Filippi and Heller were wrestling with Cahuichchii to get the handcuffs on him, Heller's police dog bit Cahuichchii's left arm. Heller testified that the dog bit Cahuichchii for

about a second, and then Heller called him off. Cahuichchii continued to be noncompliant, so Heller gave the dog a command to bite Cahuichchii again, this time on the upper left back. Cahuichchii started screaming, and Heller called the dog off, assuming that Cahuichchii would now comply. Cahuichchii continued to struggle with the officers, preventing them from getting him in handcuffs. Cahuichchii then bit Heller on the arm, continuing to bite him for 15 to 20 seconds. While Cahuichchii was biting Heller, Heller gave the police dog a command, and the dog bit Cahuichchii again. Heller also applied pressure under Cahuichchii's jaw until he let go of Heller's arm. At that point, Heller got Cahuichchii's right arm and Filippi and Benshoof placed the handcuffs on Cahuichchii's right hand and he was secured. Filippi and Benshoof estimated that the encounter lasted 3 to 3½ minutes before Cahuichchii was detained in handcuffs. Benshoof testified that 3 to 3½ minutes is a long time to effectuate a detention of a suspect.

Filippi testified that the Bellevue Police Department has a policy on the use of force with which he was familiar. A copy of the department's use of force policy was received in evidence. The policy gives the officers guidelines on the reasonable use of force and lists factors used to determine the reasonableness of force. It also states:

> Officers are authorized by law to use force that is reasonable and necessary, given the facts and circumstances perceived or known to them at the moment force is used. Officers are authorized to use reasonable force to achieve their lawful objectives and to effectively bring an incident and/or person(s) under control.

Filippi testified that he and the other officers took those guidelines into consideration when they approached Cahuichchii. He testified that because the officers were responding to a call of a felony in progress, they used more caution than they would have had it been a misdemeanor reported. Benshoof also testified that a burglary call is considered a higher-risk call, because an offender is more likely to have a weapon.

Heller testified that the Bellevue Police Department has a separate police service dog use of force policy, and a copy of the policy was entered into evidence. He testified that there is a three-factor test that is considered before using the police dog to apprehend a suspect: the severity of the crime, the threat the individual poses to law enforcement or others, and whether the person is actively resisting or attempting to flee. He testified that all of the factors were first met at the time that Filippi handcuffed Cahuichchii's left hand and he started to pull away and tried to stand up. Heller also testified that he is familiar with the Bellevue Police Department's use of force policy and that he followed the principles of that policy during the encounter with Cahuichchii. Heller testified that the use of force policy requires that the force used in a given situation be necessary and reasonable. He testified that the force used during the encounter was necessary and reasonable in the officers' attempt to gain Cahuichchii's compliance and was necessary for the officers' safety.

After the State rested, the defense called one witness, Cahuichchii's wife. She testified that Cahuichchii can speak and understand some English, but that he primarily speaks Spanish. She testified that while at the hospital where Cahuichchii was taken after he was detained, she had to translate to Spanish what the medical staff was saying in English so Cahuichchii could understand what was being said.

The State subsequently called a rebuttal witness, Brad Victor. Victor, the jail deputy for the Sarpy County sheriff's office, testified that Cahuichchii was an inmate at the jail after his arrest, that Cahuichchii spoke to him in English, and that Victor did not have any problem understanding what Cahuichchii was saying to him. Victor also testified that he made statements to Cahuichchii in English and that Cahuichchii seemed to understand what he was saying.

Prior to the case being submitted to the jury, a jury instruction conference was held. Cahuichchii proposed two instructions--one regarding self-defense, and the other regarding use of force by police officers in effecting an arrest. The State objected to the instructions, and the trial court refused to give either instruction to the jury.

The jury found Cahuichchii guilty on both charges. The trial court subsequently sentenced Cahuichchii to 1 to 3 years' imprisonment on the third degree assault on an officer conviction and 1 year's imprisonment on the resisting arrest conviction. The sentences were ordered to be served concurrently with each other.

## ASSIGNMENTS OF ERROR

Cahuichchii assigns that the trial court erred in (1) rejecting his proposed instruction regarding self-defense, (2) rejecting his proposed instruction regarding use of force by a police officer, and (3) finding that there was sufficient evidence to support a guilty verdict on both charges.

## STANDARD OF REVIEW

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013).

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Ruegge*, 21 Neb. App. 249, 837 N.W.2d 593 (2013).

## ANALYSIS

*Jury Instruction on Self-Defense.*

Cahuichchii assigns that the trial court erred in failing to give the jury his proposed instruction regarding self-defense. The instruction on self-defense proffered by Cahuichchii stated as follows: "In prosecutions for assaulting a police officer, or resisting arrest, a trial court must instruct the jury on the issue of self-defense where there is any evidence adduced which raises a legally cognizable claim that the officer used unreasonable force in making the arrest." The proffered instruction was based on the Nebraska Supreme Court's holding in *State v.*

*Yeutter*, 252 Neb. 857, 566 N.W.2d 387 (1997). In that case, the defendant was convicted of third degree assault on an officer, obstructing a peace officer, and resisting arrest. On petition for further review, the defendant argued that the trial court erred in failing to give the jury an instruction on self-defense. The court noted that subsection (2) of Neb. Rev. Stat. § 28-1409 (Reissue 2008) (the self-defense statute) provides that "[t]he use of such force is not justifiable . . . to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful." The court stated that because it was uncontroverted that the defendant knew that the arrest was being made by a police officer, he was not justified in using force on the basis that he was being arrested unlawfully. The court further stated that regardless, the defendant's assigned error did not focus on the unlawfulness of his arrest. Instead, the defendant asserted that he was entitled to a jury instruction on self-defense.

The Supreme Court in *State v. Yeutter, supra*, concluded that in order to determine the merits of the defendant's assigned error, it had to determine, as a matter of first impression, the quality and quantity of evidence necessary to raise a duty on the part of the trial court to instruct the jury on self-defense in prosecutions for assaulting an officer, obstructing a peace officer, or resisting arrest. The Supreme Court ultimately held that in prosecutions for assaulting an officer, obstructing a peace officer, or resisting arrest, a trial court must instruct the jury on the issue of self-defense when there is any evidence adduced which raises a legally cognizable claim that the police officer used unreasonable force in making the arrest.

In the present case, as in *State v. Yeutter, supra*, Cahuichchii argues that he was entitled to a jury instruction on self-defense. The State objected to Cahuichchii's proposed self-defense instruction on the basis that it was a statement of law regarding when a self-defense instruction is warranted, and not a jury instruction in and of itself. We agree. However, whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. Because of this duty, the trial court, on its own motion, must correctly instruct on the law. *State v. Yeutter, supra*. Accordingly, we will discuss whether a proper self-defense instruction was warranted based on the evidence, i.e., whether there is any evidence adduced which raises a legally cognizable claim that the police officer used unreasonable force in making the arrest.

When the officers first saw Cahuichchii, he was crouched down next to a fence with his hands near his waist, in such a way that the officers could not tell if he had a weapon. The officers told him repeatedly in English and in Spanish to put his hands up. Cahuichchii did not comply, but gave some sort of indication that he understood what he was being asked to do in that he kept responding "por que," which means "why" or "for what." When Cahuichchii did not comply after numerous requests, Benshoof displayed his Taser and told Cahuichchii that it would be used on him if he refused to comply. Subsequently, Benshoof deployed the Taser and Cahuichchii fell to the ground. After regaining his mobility, Cahuichchii tried to get away and began resisting the officers' attempts to get him in handcuffs. Filippi struck Cahuichchii twice in the ribs with his knee in an effort to get him to comply with the officers' commands. The officers got his left hand in the handcuffs, but were unable to get the right hand in handcuffs because Cahuichchii was lying on his left side with his right hand under him. While Filippi and Heller were wrestling with Cahuichchii to get the handcuffs on, the police dog bit Cahuichchii briefly on his left arm. Cahuichchii continued to be noncompliant, so Heller gave the police dog a

command to bite Cahuichchii again, this time on his back. Cahuichchii continued to struggle with the officers and then bit Heller on his arm. At that point, Heller gave the police dog a command to bite Cahuichchii a third time. Heller also applied pressure under Cahuichchii's jaw until he stopped biting Heller's arm. The officers were finally able to handcuff Cahuichchii's right hand to secure him.

The uncontroverted evidence shows that the Taser was not employed until after Cahuichchii refused to show his hands after numerous commands to do so. Filippi testified that the Taser was used to try to get Cahuichchii to comply, rather than a hands-on approach, because the officers did not know if he was armed. Benshoof testified that the Taser was the most effective way to maintain officer safety and limit any injury to Cahuichchii. When the Taser was not successful and a struggle ensued, Filippi struck Cahuichchii twice in the ribs with his knee to try to get him to stop resisting. The police dog was used after Cahuichchii continued to struggle with the officers on the ground and resisted their effort to put him in handcuffs. Heller put pressure under Cahuichchii's jaw when Cahuichchii was biting Heller and he was trying to get him to stop biting his arm.

In addition to the evidence regarding the actions of the police officers in arresting Cahuichchii, the Bellevue Police Department's use of force policy and the "Police Service Dogs and the Use of Force" policy were entered into evidence. There is nothing in the evidence to show that the officers did not follow those procedures. Filippi and Heller both testified that the policies were followed during the encounter with Cahuichchii, and Heller testified that all of the factors used to determine when the police dog can be used to apprehend a suspect were met. Heller further testified that the force used during the encounter was necessary and reasonable in the officers' attempt to gain Cahuichchii's compliance and was necessary for the officers' safety.

We conclude that Cahuichchii failed to adduce any evidence which raised a legally cognizable claim that the police officers used unreasonable force in making the arrest. Accordingly, Cahuichchii was not entitled to a self-defense instruction. His first assignment of error is without merit.

*Jury Instruction on Excessive Use of Force.*

Cahuichchii next argues that the trial court erred in refusing to give his proposed jury instruction regarding the use of force by a police officer when making an arrest. The instruction he proposed stated as follows: "A police officer in making an arrest must use only reasonable force, which is that amount of force which an ordinary, prudent, and intelligent person with the knowledge and in the situation of the arresting police officer would have deemed necessary under the circumstances."

Based on our conclusion that a self-defense instruction was not warranted because there was no evidence which raised a legally cognizable claim that the police officers used unreasonable force in making the arrest, Cahuichchii's proposed use of force instruction becomes unnecessary. There was no evidence of unreasonable force by the officers, so there is no reason to give a related instruction defining "reasonable force." Although the instruction may be a correct statement of the law, the instruction is not warranted by the evidence and Cahuichchii was not prejudiced by the court's refusal to give the instruction. See *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013). The level of force a police officer may lawfully

use when making an arrest is not at issue. Cahuichchii was charged with assaulting a police officer and resisting arrest. Thus, the case is about the force Cahuichchii used against the police officer, not the force used by the officer.

*Sufficiency of Evidence.*

Cahuichchii next assigns that the evidence was insufficient to convict him of third degree assault on a police officer and resisting arrest. His argument is based on the presumption that if his proposed instructions had been given to the jury, the jury would have found that the officers used excessive force, and that he was justified in biting Heller. Given our determination that the proposed instructions were not warranted, Cahuichchii's sufficiency of the evidence argument based on those same instructions also fails.

In any event, the evidence was sufficient to support a guilty verdict on both charges. Third degree assault of a police officer requires the State to prove beyond a reasonable doubt that Cahuichchii intentionally, knowingly, or recklessly caused bodily injury to Officer Heller, a peace officer, while Heller was engaged in the official performance of his duties. Neb. Rev. Stat. § 28-931 (Cum. Supp. 2012). "Bodily injury" is defined as physical pain, illness, or any impairment of physical condition. Neb. Rev. Stat. § 28-109 (Reissue 2008).

The undisputed evidence shows that Cahuichchii bit Heller on the arm causing him bodily injury. In addition, Heller was in his police uniform and on duty at the time. He initially approached Cahuichchii as a result of being dispatched to investigate a burglary and subsequently arrested him as a result of Cahuichchii's failure to comply with Heller's and the other officers' commands. Thus, Heller was clearly in the official performance of his duties. The evidence was sufficient to support a guilty verdict on the third degree assault on a police officer charge.

In regard to resisting arrest, the State had to prove that Cahuichchii, while intentionally preventing or attempting to prevent a peace officer acting under color of his official authority from effecting an arrest of the actor, used or threatened to use physical force or violence against the peace officer, used any other means which created a substantial risk of causing physical injury to the peace officer, or employed means requiring substantial force to overcome resistance to effecting the arrest. Neb. Rev. Stat. § 28-904 (Reissue 2008).

If an individual struggles while officers are working to arrest him, he commits the crime of resisting arrest. In *State v. Campbell*, 260 Neb. 1021, 620 N.W.2d 750 (2001), the Nebraska Supreme Court determined that a defendant's conduct in resisting handcuffing and struggling after she had been informed she was under arrest was sufficient to sustain her conviction for resisting arrest. However, a police officer is not required to verbally inform an individual he is under arrest, if the officer's conduct indicates an arrest. See *U.S. v. Sledge*, 460 F.3d 963 (8th Cir. 2006) (interpreting Nebraska law).

In the present case, Cahuichchii engaged the officers--Heller, Filippi, and Benshoof--in a substantial physical altercation. During the altercation, Cahuichchii physically resisted the officers' attempts to gain control and to handcuff him. During the altercation, Heller suffered physical injury. Although the officers did not testify that they verbally advised Cahuichchii that he was under arrest, their intent to arrest him was evident from their actions.

The evidence showed that Cahuichchii used physical force or violence against Heller while intentionally attempting to prevent the officers' from arresting him. His actions also required three police officers to use substantial force to overcome Cahuichchii's resistance to effect the arrest. Viewing the evidence in the light most favorable to the State, we find the evidence was sufficient to support Cahuichchii's conviction for resisting arrest.

## CONCLUSION

We conclude that the trial court did not err in refusing to give Cahuichchii's proposed jury instructions regarding self-defense and the use of force by police officers when making an arrest. We further conclude that there was sufficient evidence to support a guilty verdict on the charges against Cahuichchii. Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.