STATE OF NEBRASKA, APPELLEE, V. GARY E. GRAHAM, APPELLANT.
450 N.W.2d 673

Filed January 26, 1990.   No. 89-217.

Peter K. Blakeslee for appellant.

Robert M. Spire, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Contending that the Otoe County Court erred in refusing to instruct the jury on justification for use of force in self-protection, Gary E. Graham appeals his conviction for third degree assault in violation of Neb. Rev. Stat. § 28-310 (Reissue 1989). We reverse and remand the cause for a new trial.

During the afternoon and continuing into the evening of July 3, 1988, the victim, James R. Barker, had been consuming drinks containing alcohol in several bars in Nebraska City. There was testimony that Barker was intoxicated and belligerent on the night in question.

At approximately 10 p.m., Barker entered the bar in which the alleged third degree assault occurred. It is uncontradicted that while maneuvering for a pool shot, Barker rudely removed a chair upon which the defendant's feet were resting. Graham and his girlfriend then left the premises to avoid the possibility of an altercation. No words were exchanged between Graham and Barker at that time.

Approximately 30 to 45 minutes later, Graham, accompanied by his girlfriend, returned to the bar to pick up a friend. Graham followed his girlfriend to the rear of the bar. As

Graham's girlfriend passed Barker, who was either standing near, or sitting on a stool at, the end of the bar, Barker made a vulgar comment concerning the girlfriend and touched her buttocks. Graham responded, "That's my old lady." To this, Barker said he didn't care. The testimony as to events following this exchange is in conflict.

A police sergeant testified that Graham informed him that Barker drew back his hand and started to rise from his chair. The defendant informed the officer that he thought Barker was going to hit him, so Graham hit Barker one time. Graham also told the sergeant that Barker fell back in his chair and started to come up again. Graham told the sergeant that he again struck Barker and Barker went down to the floor.

A witness testified that he observed Barker pick up a beer bottle and try to hit Graham with it. The witness said he thought the defendant was defending himself. The witness further testified that Graham picked up Barker midlength and threw him headfirst into a pool table.

Graham's girlfriend testified that although she did not see the alleged assault because she continued walking past Barker, Barker could only have been hit a couple of times.

Jim Bohlen, a friend of Graham's, testified that Barker grabbed a beer bottle and was getting ready to take a swing. Bohlen said that at that time, Graham "popped [Barker] twice right between the eyes," and Barker fell to the floor, partially underneath the pool table. Bohlen testified that he thought that Graham was defending himself. He further testified that after Barker's friends lifted him from the floor and placed him in a chair, Barker fell on the floor a couple of times. It was later determined that Barker had suffered a broken neck.

Upon the request of the bartender, Graham left the bar without further incident. As Graham and his girlfriend were departing the premises, Graham informed Barker's friend that he was the one who had hit Barker. At that time, the seriousness of Barker's injury was unknown.

A rescue squad was called for assistance. A member of the rescue squad testified that Barker had blood on his lips, but no wound on his head. A neurosurgeon testified that there were abrasions about Barker's frontal region, just behind his scalp,

and about Barker's temple and one ear. Barker also had an abrasion and cut on his chin. The doctor testified that being struck on the chin alone would not cause a broken neck. The doctor also stated that Barker could have sustained this sort of an injury to his neck by falling. The doctor also testified that falling after being punched and striking his head on a pool table would be consistent with Barker's broken neck. The neurosurgeon testified that if Barker was picked up and his head thrust into the pool table, this too would be consistent with Barker's injury.

After leaving the bar, Graham called the police to determine if they wished to speak with him. At 1:25 a.m. on July 4, Graham was interviewed by the Nebraska City police sergeant and gave his statement regarding the events at the bar.

Graham was charged with third degree assault. A jury trial was had in the county court for Otoe County. The court refused Graham's requested instruction on justification for use of force in self-protection, commonly known as self-defense. The jury found Graham guilty of violating § 28-310(1)(a), which provides that "[a] person commits the offense of assault in the third degree if he . . . [i]ntentionally, knowingly, or recklessly causes bodily injury to another person." The court sentenced Graham to 1 year's imprisonment. On appeal, the district court for Otoe County affirmed the conviction and sentence.

On appeal to this court, Graham alleges that the county court erred in refusing to give to the jury an instruction regarding justification for use of force in self-protection.

Self-defense has been codified in Neb. Rev. Stat. § 28-1409 (Reissue 1989). Section 28-1409(1) provides:

> Subject to the provisions of this section and of section 28-1414, the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

In order for the self-defense justification to be applicable, (1) the belief that force is necessary must be reasonable and in good faith, *State v. Cowan*, 204 Neb. 708, 285 N.W.2d 113 (1979); (2) the force must be immediately necessary, *State v. Schroeder*,

199 Neb. 822, 261 N.W.2d 759 (1978); and (3) the force used must be justified under the circumstances, *State v. Drew*, 216 Neb. 685, 344 N.W.2d 923 (1984). See, also, NJI 14.33.

A defendant is entitled to have the jury instructed on his or her theory of defense if there is *any* evidence to support it. *State v. Clayburn*, 223 Neb. 333, 389 N.W.2d 314 (1986).

Graham did not testify. The trial court refused the self-defense instruction because it apparently believed that a defendant must testify in order to establish his or her good-faith belief that force was necessary. However, this is not the rule in this state. As expressed in *Clayburn*, it is necessary only that there be any evidence to support a theory of self-defense.

If the jury that tried Graham believed the defendant's version of the facts and his state of mind as related in the testimony of the police sergeant, that Barker intended to hit Graham with his hand, that Barker had picked up a beer bottle and was attempting to hit Graham with it, and that it appeared to bystanders that Graham was defending himself when he hit Barker, then the jury could have reasonably found that Graham's use of force against Barker was justified. Since there was evidence supporting a self-protection defense, the trial court should have instructed the jury accordingly.

Failure to give a jury instruction constitutes reversible error only if there is prejudice to the defendant. *State v. Reichstein*, 233 Neb. 715, 447 N.W.2d 635 (1989). Obviously, without a justification for use of force in self-protection instruction, the jury could not consider that defense. Graham is correct in arguing that without authority to consider self-defense, the jury had no choice but to find the defendant guilty of the assault charge.

Because the trial court refused to instruct the jury on self-defense, Graham was prejudiced. We reverse, and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.