STATE OF NEBRASKA, APPELLEE, V. EDWIN B. YEUTTER, APPELLANT.
566 N.W.2d 387

Filed July 25, 1997.   No. S-96-255.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

Edwin B. Yeutter was convicted by a jury of third degree assault on an officer, Neb. Rev. Stat. § 28-931 (Reissue 1995); obstructing a peace officer, Neb. Rev. Stat. § 28-906 (Reissue 1989); and resisting arrest, Neb. Rev. Stat. § 28-904 (Reissue 1995). The district court for Dawson County sentenced Yeutter to 180 days' imprisonment on each of the three convictions, with the sentences to run concurrently. The Nebraska Court of Appeals, in a memorandum opinion filed December 18, 1996, affirmed Yeutter's convictions for resisting arrest and third degree assault on an officer and reversed his conviction and vacated his sentence for obstructing a peace officer.

We granted Yeutter's petition for further review solely to determine whether Yeutter was entitled to an instruction on self-defense. We conclude that Yeutter failed to adduce any evidence which raised a legally cognizable claim that the police officer used unreasonable force in making the arrest. Accordingly, Yeutter was not entitled to a self-defense instruction, and the judgment of the Court of Appeals is affirmed.

## BACKGROUND

On September 3, 1995, Officer Russell Besmer of the Cozad Police Department picked up a dog that was running at large in violation of a Cozad city ordinance. From prior contacts with that particular dog, Besmer was aware that the dog belonged to Yeutter. When Besmer arrived at Yeutter's residence, there was no one at home, so he put the dog inside a fenced area and left his business card on Yeutter's door with instructions for Yeutter to contact the police department.

The following day Yeutter called the police department and spoke to Besmer. Besmer informed Yeutter that he needed to come to the police station and pick up a citation for allowing his dog to run at large. Yeutter refused to come to the police station and told Besmer that if he wanted to cite him, Besmer would need to come to his residence to do so.

Besmer proceeded to Yeutter's residence to issue the "dog at large" citation. When Besmer arrived at the residence, he saw Yeutter's wife in their driveway and asked her "where the guy was with the attitude on the phone." At that time, Yeutter approached the driveway and stated that it sounded like Besmer was "the one with the attitude."

Besmer asked Yeutter for identification so that he could fill out the "dog at large" citation (name, date of birth, height, weight, et cetera). According to Besmer, Yeutter refused to provide the requested identification and to accept a citation. Besmer again asked Yeutter for identification and stated that if Yeutter did not cooperate, he would be arrested for obstructing a police officer. According to Yeutter, after Besmer asked for identification, Yeutter explained that he did not have any on him and then attempted to get his identification out of his car, but Besmer "would not give [him] a chance." Yeutter denies stating that he would not accept a citation.

Yeutter eventually held out his arms and stated, "[G]o ahead and take me." Besmer told Yeutter to place his hands on a nearby car, which Yeutter refused to do. Besmer radioed for backup and again told Yeutter to place his hands on the vehicle because he was under arrest. Again, Yeutter did not comply.

At that time, Yeutter's wife got between the two men and pushed Besmer back with her hand on his chest, stating, "[Y]ou

are not taking him." According to Besmer, while he was trying to hold Yeutter's wife back and get around her to place Yeutter under arrest, Yeutter came around the side of his wife toward Besmer in "a threatening manner." According to Yeutter, Besmer came around Yeutter's wife toward him. Besmer grabbed Yeutter's arm and forced Yeutter down on the gravel driveway so that he could place handcuffs on him.

While the two men were on the ground, Besmer's baton fell out of its holder. Besmer testified that Yeutter grabbed the baton but dropped it after being instructed to do so by Besmer. Yeutter testified that he saw the baton on the ground but never touched it.

Yeutter admits to grabbing one end of Besmer's handcuffs during the struggle and not letting go after being repeatedly instructed to do so by Besmer. Yeutter testified, "I didn't want him to cuff me. I thought he was out of line." Besmer admits that at one point, Yeutter stated that if Besmer would get off him, he would let Besmer handcuff him. However, Besmer testified that he did not let Yeutter up because "I didn't feel he would let me put the handcuffs on him at that time because he was already fighting at that time."

Besmer attempted to get Yeutter's arms out from underneath Yeutter by applying a pressure point. However, when Besmer put his left hand over Yeutter's face so that he could apply the pressure point, Yeutter bit one of Besmer's fingers. Yeutter admits to biting down on Besmer's finger but states that it was "a natural instinct: when something goes in my mouth I bite." Yeutter testified that he never saw Besmer's finger because Besmer was covering Yeutter's eyes in an attempt to apply a pressure point and that he ceased biting when he realized that it was Besmer's finger in his mouth. Besmer testified that when he had his hand over Yeutter's eyes, Yeutter reached up and bit his finger. Besmer further testified that the bite did not break the skin, but that it caused pain and caused his finger to swell and turn red.

A backup officer eventually arrived at Yeutter's residence, and the two officers handcuffed Yeutter. While Besmer was escorting Yeutter to the police cruiser, Yeutter unsuccessfully attempted to pull away. When they arrived at the police cruiser, Besmer opened the vehicle's door and told Yeutter to get in the

vehicle, but Yeutter refused to sit down. After a second request, Yeutter entered the police cruiser.

As a result of the struggle, Besmer also received several scratches on his right hand and received a blood blister on his right little finger from the handcuffs and the gravel on the driveway.

## ASSIGNMENT OF ERROR

Yeutter asserts that the Court of Appeals erred in failing to determine that the district court had a duty to instruct the jury on the amount of force that a police officer may employ in making an arrest and the amount of force that a citizen may employ to defend himself against excessive force.

## STANDARD OF REVIEW

Regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the trial court. *State v. Stubblefield*, 249 Neb. 436, 543 N.W.2d 743 (1996); *State v. Lynch*, 248 Neb. 234, 533 N.W.2d 905 (1995).

## ANALYSIS

In his sole assigned error to this court, Yeutter asserts that the Court of Appeals erred in failing to determine that the district court had a duty to instruct the jury on the amount of force that a police officer may employ in making an arrest and the amount of force that a citizen may employ to defend himself against excessive force. Before addressing this assertion, we must first note that Yeutter's arrest for obstructing a police officer was an illegal arrest.

A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he intentionally obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer or judge acting under color of his official authority.

§ 28-906.

The record does not reflect that at the time that Besmer attempted to arrest Yeutter, Yeutter used or threatened to use violence or force or physically interfered with the officer. The

record does reflect that Yeutter refused to answer routine questions necessary for the officer to complete a citation. However, the mere verbal refusal to provide information to an officer does not constitute an obstacle to the enforcement of the penal laws as contemplated by § 28-906. There must be some sort of physical act in order for a violation of this statute to occur. Cf. *In re Interest of Richter*, 226 Neb. 874, 415 N.W.2d 476 (1987) (running away from police constituted physical obstacle within meaning of § 28-906).

However, it is well established that "[t]he use of such force is not justifiable . . . to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful." Neb. Rev. Stat. § 28-1409(2) (Reissue 1995). Because it is uncontroverted that Yeutter knew that Besmer was a police officer, Yeutter was not justified in using force on the basis that he was being arrested unlawfully. Regardless, Yeutter's assigned error does not focus on the unlawfulness of his arrest. Instead, Yeutter asserts that he was entitled to a jury instruction on self-defense.

Whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. Because of this duty, the trial court, on its own motion, must correctly instruct on the law. *State v. Adams*, 251 Neb. 461, 558 N.W.2d 298 (1997).

Thus, in order to determine the merit of Yeutter's assigned error, we must first determine the quality and quantity of evidence necessary to raise a duty on the part of the trial court to instruct the jury on self-defense in prosecutions for assaulting an officer, obstructing a peace officer, or resisting arrest. This issue is one of first impression.

In cases outside the context of prosecutions for assaulting an officer, obstructing a peace officer, or resisting arrest, a trial court must instruct the jury on the issue of self-defense when there is any evidence adduced which raises a legally cognizable claim of self-defense. See *State v. Kinser, ante* p. 600, 567 N.W.2d 287 (1997). To successfully assert the claim of self-defense, one must have a both reasonable and good faith belief in the necessity of using force. *Id.*; *State v. White*, 249 Neb. 381, 543 N.W.2d 725 (1996). In addition, the force used in defense

must be immediately necessary and must be justified under the circumstances. *State v. Kinser, supra; State v. Graham*, 234 Neb. 275, 450 N.W.2d 673 (1990). We have also stated that a police officer, in making an arrest, must use only reasonable force, which is that amount of force which an ordinary, prudent, and intelligent person with the knowledge and in the situation of the arresting police officer would have deemed necessary under the circumstances. *State v. Thompson*, 244 Neb. 189, 505 N.W.2d 673 (1993); *Wagner v. City of Omaha*, 236 Neb. 843, 464 N.W.2d 175 (1991).

Thus, in prosecutions for assaulting an officer, obstructing a peace officer, or resisting arrest, we hold that a trial court must instruct the jury on the issue of self-defense when there is any evidence adduced which raises a legally cognizable claim that the police officer used unreasonable force in making the arrest.

In the instant case, the following facts are uncontroverted: Besmer told Yeutter that he would arrest Yeutter for obstructing a police officer if Yeutter did not provide the requested identification. Yeutter held out his arms and stated, "[G]o ahead and take me." Besmer then told Yeutter to place his hands on a nearby car, which Yeutter refused to do. Besmer again told Yeutter to place his hands on the vehicle because he was under arrest. Again, Yeutter did not comply. Eventually, Besmer grabbed Yeutter's arm and forced Yeutter down on the gravel driveway so that he could place handcuffs on him.

While the two men were on the ground, Yeutter grabbed one end of Besmer's handcuffs and would not let go after being repeatedly instructed to do so by Besmer. Yeutter testified, "I didn't want him to cuff me. I thought he was out of line." At one point, Yeutter stated that if Besmer would get off him, he would let Besmer handcuff him. Besmer attempted to get Yeutter's arms out from underneath Yeutter by applying a pressure point. However, when Besmer put his left hand over Yeutter's face so that he could apply the pressure point, Yeutter bit one of Besmer's fingers.

Thus, the uncontroverted evidence shows that Besmer did not take Yeutter to the ground until after Yeutter twice refused to put his hands on the vehicle as ordered by the officer. Besmer did not attempt to apply a pressure point to Yeutter until after

Yeutter grabbed the officer's handcuffs and otherwise resisted being handcuffed. The fact that Yeutter initially held out his hands and said "[G]o ahead and take me" and later stated to Besmer that if Besmer would get off him, he would let Besmer handcuff him is of no significance. An officer need not comply with a suspect's requests on how and when the officer should conduct the arrest.

## CONCLUSION

We conclude that Yeutter failed to adduce any evidence which raised a legally cognizable claim that the police officer used unreasonable force in making the arrest. Accordingly, Yeutter was not entitled to a self-defense instruction.

AFFIRMED.

WHITE, C.J., concurs.