IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. PETRICK


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

CALEB R. PETRICK, APPELLANT.


Filed November 1, 2016.    No. A-15-1104.


Appeal from the District Court for Sarpy County: DAVID K. ARTERBURN, Judge. Affirmed.

Patrick J. Boylan, Sarpy County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.


INBODY, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Caleb R. Petrick appeals from his convictions for assaulting an officer, resisting arrest, and obstructing a peace officer following a jury trial in the district court for Sarpy County, Nebraska. For the following reasons, we affirm.

## BACKGROUND

On July 1, 2014, a citizen noticed two young males peering into a white SUV and trying the door handles while it was parked outside a tanning center in Sarpy County, Nebraska. The citizen became concerned that the young men were trying to steal vehicles so he called 911 to report his suspicions. Officers Pablo Jimenez, Brian Stolley, and Michael Brown of the La Vista Police Department arrived in uniform to investigate the incident. Stolley arrived first on the scene

- 1 -

and interviewed the citizen, who indicated that the youth he had observed were on their bicycles at a restaurant across the street.

Jimenez testified that he received Stolley's radio call indicating that the youth were in the restaurant parking lot. Jimenez arrived at the restaurant and observed Petrick on his bicycle. In response to Jimenez's request that Petrick come over and speak to the officer, Petrick replied, "fuck, no, I'm not going over there." Jimenez then asked Petrick to calm down and informed Petrick that he was investigating a report of youth looking into cars. At some point, Jimenez and Petrick moved towards one another. During the conversation, Stolley arrived at the restaurant. Jimenez testified that when Stolley arrived, Jimenez and Petrick were about arm's distance apart and Petrick was very upset, was using an elevated voice, was clenching his bicycle handlebars, and had assumed an aggressive posture. Jimenez stated, however, that he did not feel afraid.

As Stolley approached, Petrick asserted that the car he had been accused of peering into was his own vehicle. The officers did not immediately investigate the truth of this statement; however, they were later able to confirm that the vehicle which the witness had seen Petrick peering into belonged to Petrick's mother. Stolley told Petrick to "watch his mouth" because Petrick was continuing to use profanity in addressing Jimenez. Stolley then grabbed Petrick's left hand to detain him. Stolley testified that he made a judgment call to detain Petrick because he was concerned for Jimenez's safety and he considered Petrick to be a suspect in a crime. Stolley asserted that he felt he needed to handcuff Petrick for Jimenez's safety because from his perspective Petrick appeared to be nose to nose with Jimenez and speaking in an agitated voice.

Jimenez testified that after Stolley seized Petrick's left wrist, Petrick pulled his left arm inward and swung at Stolley with his right hand. Officer Brown testified that he arrived at the scene during this exchange and that he also witnessed Petrick swing his right arm at Stolley as though to strike him. Jimenez and Brown testified that Stolley and Petrick then fell backward. Stolley testified that he did not see Petrick attempt to strike him, but that Petrick pulled his wrist away from Stolley's grip and Stolley then attempted to take Petrick off his bicycle and to the ground.

The officers testified that as Stolley and Petrick were getting up off the ground, Petrick placed Stolley in a chokehold by wrapping his left arm around Stolley's neck from behind. A scuffle ensued during which Stolley punched Petrick's groin, thigh, and hips, which Stolley claimed to have done because he was not sure if Petrick was under control by the other officers.

The officers were ultimately able to handcuff Petrick after threatening to "tase him" if he continued to resist. Following the scuffle, Petrick was placed under arrest for assaulting an officer. Stolley suffered minor injuries.

Two employees of the restaurant and a companion of Petrick's testified differently regarding the series of events. Petrick's companion who was with him in the parking lot testified that he heard Petrick swearing at the officers, but that Petrick did not threaten the officers and kept his hands on the handlebars of his bicycle. He stated that Petrick never swung at the officers and denied seeing Petrick place Stolley in a chokehold. He stated that he saw the officers hit Petrick, but that Petrick was not resisting the officers.

A restaurant employee testified that she saw some of the incident and believed the officers were using too much force. The employee stated that she saw one of the officers punching Petrick

in the stomach while the other two had him pinned to the ground. The employee did not see Petrick swing at the officer, but admitted she did not witness the entire incident.

The restaurant manager also testified. He observed one of the officers taking Petrick to the ground. He stated that he heard officers yelling to Petrick to stop resisting, but that Petrick did not seem to be resisting. He testified that he did not see Petrick swing at the officers.

Following a jury trial, the jury found Petrick guilty of all three counts. The district court sentenced Petrick to 3 to 5 years' imprisonment for assaulting an officer, 6 months to 12 months' imprisonment for resisting arrest, and 6 months to 12 months' imprisonment for obstructing a peace officer. Petrick's sentence on count I was to run consecutively to other sentences, while his sentences on counts II and III were ordered to run concurrently with one another. Petrick appeals from this judgment.

## ASSIGNMENTS OF ERROR

Petrick assigns that the district court erred in (1) not defining "unreasonable force" for the jury in instruction No. 6 (the self-defense jury instruction) and (2) not admitting the La Vista Police Department "use of force" protocols into evidence. Petrick further assigns that the State did not adduce sufficient evidence to sustain his convictions for any of the three counts.

## STANDARD OF REVIEW

Whether jury instructions given by a trial court are correct is a question of law. *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

Determinations of whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice and other considerations described in rule 403 is a matter within the district court's discretion and will not be reversed on appeal absent an abuse of that discretion. *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011).

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

## ANALYSIS

*Jury Instructions.*

Petrick first argues that the district court erred in not defining "unreasonable force" in jury instruction No. 6, the jury instruction on self-defense. Petrick admits that he did not request a definition. A party who does not request a desired jury instruction cannot complain on appeal about incomplete instructions. *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003). To overcome this omission, Petrick argues that the trial court had an independent duty to define unreasonable force even without a request from one of the parties. We interpret this as an argument that the trial court

committed plain error in failing to include a definition of "unreasonable force" in the jury instruction on self-defense. We disagree.

Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Adams*, 251 Neb. 461, 558 N.W.2d 298 (1997). In regard to plain error, an appellate court always reserves the right to note plain error. *Id.* A trial court has a duty to correctly instruct on the law whether requested to do so or not, and an appellate court may take cognizance of plain error if such instructions indicate a probable miscarriage of justice. *Id.*

In the present case, the jury was instructed as follows:

The issue of self defense has been raised to the charges of assault on an officer, resisting arrest, and obstructing a peace officer.

The defendant can be found to have acted in self defense if:

1. The officer used unreasonable force against the defendant, and

2. Under the circumstances as they existed at the time, the defendant reasonably believed that the force he used against the officer was immediately necessary to protect the defendant against any such unreasonable force used by the officer.

The fact that the defendant may have been wrong in estimating the danger does not matter so long as there was a reasonable basis for what he believed and he acted reasonably in response to that belief.

This instruction was taken from the Nebraska Pattern Jury Instruction on self-defense and modified to include the prerequisite from *State v. Yeutter*, 252 Neb. 857, 566 N.W.2d 387 (1997) that the jury also find that the officer used unreasonable force. NJI2d Crim. 7.1.

In *State v. Yeutter, supra*, the Nebraska Supreme Court held that "in prosecutions for assaulting an officer, obstructing a peace officer, or resisting arrest, [the] trial court must instruct the jury on the issue of self-defense when there is any evidence adduced which raises a legally cognizable claim that the police officer used unreasonable force in making the arrest." *Id. at* 863, 566 N.W.2d at 391. *State v. Yeutter, supra*, goes on to define "unreasonable force" as "that amount of force which an ordinary, prudent, and intelligent person with the knowledge and in the situation of the arresting police officer would have deemed necessary under the circumstances." Although the Court in *State v. Yeutter, supra*, did not find the defendant to be entitled to a self-defense instruction and did not provide an outline for such an instruction, Petrick argues that the district court plainly erred in not including in its instruction the language from *State v. Yeutter, supra*, which defines "unreasonable force." We disagree.

Jurors are accepted because they are men and women of common sense and have a common understanding of words ordinarily used in our language. *State v. Duncan*, 293 Neb. 359, 373, 878 N.W.2d 363 (2016). In instructing a jury, the trial court is not required to define language commonly used and generally understood. *Id.* While such an instruction may have been helpful to the jury, the district court's failure to include this language in the instruction *sua sponte* does not rise to plain error indicating a miscarriage of justice. See *State v. Adams, supra*.

Petrick also argues that the absence of a definition of unreasonable force produced a jury question, further evidencing the need for such a definition. The question posed by the jury during deliberations was "If we find that the defendant acted in self-defense, does that mean all the charges no longer matter due to self-defense?" We fail to see how this question supports the argument that the jury failed to understand the meaning of "unreasonable force." Rather, we interpret the question to relate to whether self-defense was a defense to all charges. Accordingly, we find no merit in appellant's assigned error.

*Use of Force Protocols.*

Petrick sought to offer section 301 of the La Vista Police Department Policy Manual containing the use of force protocols. Contained within this 12 page document is section 301.6 which sets forth factors used to determine the reasonableness of force. Petrick argued at trial that this section would assist the jury in determining whether the officers used reasonable force in Petrick's detainment and arrest. In sustaining the State's objection, the court noted that the exhibit was "much more voluminous than just 301.6." It further stated that section 301.6 could not be utilized as a definition of reasonable force because "reasonableness is an issue that would go to the jury and should not be, in essence, defined." It ultimately concluded that "the totality of the exhibit could lend itself to confusion and take the jury off of their core inquiry as to whether the use of force was reasonable if they get the [self-defense] instruction."

Petrick assigns as error the district court's refusal to admit the use of force protocols into evidence. In the argument section of his brief, however, he only recites facts establishing that he offered the exhibit and that the court refused to admit it. In the heading of his argument, Petrick states that the protocols were "relevant and necessary," but he does not argue that the court abused its discretion in finding the exhibit would confuse the jury.

Nebraska Rule of Evidence 403 provides in pertinent part that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of confusing the issues or misleading the jury. Neb. Rev. Stat. § 27-403 (Reissue 2008). Determinations of whether the probative value of the evidence is substantially outweighed by the dangers described in rule 403 is a matter within the district court's discretion and will not be reversed on appeal absent an abuse of that discretion. *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011).

Because Petrick does not argue the application of Rule 403, we decline to address his argument that the exhibit was relevant. Pursuant to Rule 403, even relevant evidence may be excluded where its probative value is outweighed by the danger of confusing the issues or misleading the jury. We therefore find no error in the trial court's ruling.

*Sufficiency of Evidence.*

Petrick finally assigns that the evidence adduced at trial was not sufficient to support any of his three convictions. However, in his brief, Petrick argues only that the evidence does not support his conviction for obstruction of a peace officer. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014). Therefore, we consider only Petrick's argument that the evidence does not support his conviction for obstruction of a peace officer.

Neb. Rev. Stat. § 28-906 (Reissue 2008) provides in relevant part that a person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer.

Petrick argues that he did not obstruct a peace officer because he used no threats or physical force to resist questioning by Jimenez. However, evidence that a defendant physically resisted an arrest may support a conviction for obstructing a peace officer. This is true even if an arrest is unlawful. See *State v. Yeutter*, 252 Neb. 857, 566 N.W.2d 387 (1997); see, also, *United States v. Sledge*, 460 F.3d 963 (8th Cir. 2006). In *State v. Campbell*, 260 Neb. 1021, 620 N.W.2d 750 (2001), the Nebraska Supreme Court held that evidence showing that a defendant resisted handcuffing, struggled with an officer, and continued to resist restraint are alone sufficient to sustain a conviction for obstructing a peace officer.

In the case before us, officers testified that Petrick swung at Stolley, a uniformed peace officer, placed him in a chokehold, resisted handcuffing, and physically struggled with all three officers while he was being detained and then placed under arrest. Although Petrick also adduced evidence that he did not strike, choke, or resist officers, this created a question of fact for the jury on which the jury found in favor of the State.

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Taking all evidence in the light most favorable to the State, the evidence adduced from the officers is sufficient to support a conviction for obstruction of a peace officer, even assuming without deciding that the detention or arrest was unlawful. See *State v. Campbell, supra*; *State v. Yeutter, supra*. Therefore, this assignment of error is without merit.

## CONCLUSION

Following our review of the record, we find no error by the trial court and affirm Petrick's convictions on all charges.

AFFIRMED.