Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/15/2019 08:08 AM CST

State of Nebraska, appellee, v.
Jahhme D. Jackson, appellant.
___ N.W.2d ___

Filed January 8, 2019.    No. A-17-1154.

1. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.
2. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.
3. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.
4. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
5. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
6. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the

evidence, and (3) the appellant was prejudiced by the court's refusal to give the instruction.

7. **Self-Defense.** To successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force and the force used in defense must be immediately necessary and justified under the circumstances.

8. **Self-Defense: Proof.** The defendant bears the initial burden to produce evidence which supports a claim of self-defense.

9. **Self-Defense.** Only unlawful force directed at a defendant provides a justifiable basis for self-defense.

10. **Sentences: Appeal and Error.** An appellate court will not disturb sentences that are within statutory limits, unless the district court abused its discretion in establishing the sentence.

11. ____: ____. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the following factors: the defendant's age, mentality, education, experience, and social and cultural background, as well as his past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime.

12. ____: ____. An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result.

Appeal from the District Court for Lancaster County: Darla S. Ideus, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Yohance Christie for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Pirtle, Bishop, and Arterburn, Judges.

Pirtle, Judge.

## INTRODUCTION

Jahhme D. Jackson appeals his conviction and sentence for assault in the second degree in the district court for Lancaster County. He argues that the district court failed to provide proper

jury instructions, that an exhibit was improperly excluded, that the evidence was insufficient to support a guilty verdict on the charge, and that his sentence was excessive. Based on the reasons that follow, we affirm.

## BACKGROUND

On May 11, 2017, Jackson was charged by information with assault in the second degree, a Class IIA felony, in violation of Neb. Rev. Stat. § 28-309 (Reissue 2016). The charge arose from an incident on October 18, 2016, at the Nebraska State Penitentiary, where Jackson was incarcerated. Jackson had been placed in the "control unit" approximately 1 month before the incident occurred. On October 17, Jackson indicated to a staff member that he was suicidal. Jackson told the staff member that he was going to jump off the sink in his cell and "crack [his] head open." Jackson was subsequently moved to the skilled nursing facility (SNF). Inmates being taken to or from the control unit must be placed in restraints pursuant to Nebraska Department of Correctional Services procedures. When Jackson was moved from the control unit to the SNF, he was in restraints.

At the SNF, Jackson was placed in a room with a padded bed which was equipped with a five-point restraint system. The five-point restraint system is used to hold a person flat on his or her back by attaching fabric restraints to the person's legs, arms, and chest. Jackson was placed in the five-point restraint system. He remained in the five-point restraint system until dinner on October 18, 2016. Staff members released Jackson's chest and right arm restraints to allow him to eat. After eating, Jackson refused to allow the staff members to reattach the chest and right arm restraints.

At approximately 6 p.m. on October 18, 2016, Sgt. William Hogan was given orders by his lieutenant to move Jackson from the SNF to the control unit. Hogan and another staff member went to Jackson's room. Hogan entered Jackson's room and removed the blanket covering Jackson. He then provided

Jackson with a T-shirt and sweatshirt, because Jackson had been wearing paper garments while in the SNF. Hogan undid the restraint on Jackson's left arm to allow him to put on the clothing. After Jackson put on the clothing, Hogan approached him in order to put restraints on him for the transport to the control unit. Hogan said Jackson "told [him], if you put hands on me, I am going to put hands on you." Hogan attempted to further communicate with Jackson regarding this statement and the situation, but Jackson did not say anything else. Hogan then leaned over Jackson to attempt to put the restraints on him and Jackson jerked his hand away. Hogan called for assistance from the emergency response team (ERT).

Sgt. Jared Hanner was the ERT supervisor at that time. He responded to Hogan's call, along with the other ERT members. Hogan described the situation to Hanner. Hanner then explained to the ERT members that they would act in unison to restrain Jackson's arms if force was necessary. The ERT members entered the room along with Hogan and surrounded the bed that Jackson was on. Hanner asked Jackson "if he was going to fight," to which Jackson did not reply. Hanner then gave a signal to the other ERT members to attempt to restrain Jackson's arms in unison. Hanner restrained Jackson's left arm, but the other ERT members were not able to restrain his right arm and Jackson hit Hanner in the face twice with his right fist. ERT members then restrained Jackson on the bed until his hands were handcuffed behind his back. A member of the medical staff then came and examined Jackson to ensure he was not injured. Jackson was not injured during the incident. He was ultimately transported via a gurney to the control unit. Hanner suffered a black eye and a chipped bone in his nose.

After hearing all of the evidence, the jury convicted Jackson of assault in the second degree. The district court subsequently sentenced Jackson to 2 to 4 years' imprisonment to run consecutively to any other sentence Jackson was serving. Jackson received 2 days of credit for time served.

## ASSIGNMENTS OF ERROR

Jackson asserts the district court erred in failing to provide a self-defense instruction to the jury and in excluding exhibit 5 from evidence. He further asserts that there was insufficient evidence to sustain a conviction and that the district court imposed an excessive sentence.

## STANDARD OF REVIEW

[1] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Miller*, 281 Neb. 343, 798 N.W.2d 827 (2011).

[2,3] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

[4] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018), *disapproved on other grounds, State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

[5] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018).

## ANALYSIS

### Jury Instruction

At trial, Jackson requested that the court include a jury instruction regarding self-defense. The court determined that Jackson had not presented sufficient evidence to warrant the inclusion of a self-defense instruction.

[6-9] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the instruction. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017). To successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force and the force used in defense must be immediately necessary and justified under the circumstances. *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999). The defendant bears the initial burden to produce evidence which supports a claim of self-defense. *Id*. To successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force. *Id*. Only unlawful force directed at a defendant provides a justifiable basis for self-defense. *Id*. "Unlawful force" is force "which is employed without the consent of the person against whom it is directed and the employment of which constitutes an offense or actionable tort." Neb. Rev. Stat. § 28-1406(1) (Reissue 2016). The use of force by a warden or other authorized official of a correctional institution is justified if:

> (a) He or she believes that the force used is necessary for the purpose of enforcing the lawful rules or procedures of the institution, unless his or her belief in the lawfulness of the rule or procedure sought to be enforced is erroneous and his or her error is the result of ignorance or mistake as to the provisions of sections 28-1406 to 28-1416, any other provision of the criminal

law, or the law governing the administration of the institution;

(b) The nature or degree of force used is not forbidden by section 28-1408 or 28-1409; and

(c) If deadly force is used, its use is otherwise justifiable under sections 28-1406 to 28-1416.

Neb. Rev. Stat. § 28-1413(4) (Reissue 2016).

The district court found that Jackson had not presented any evidence that the force used against him was unlawful. Jackson argues that the force was unlawful because the ERT members did not follow proper procedures. Jackson specifically alleges that this was a "planned use of force" which has a set of procedures which were not followed in this case. Brief for appellant at 18. In addition, Jackson alleges that the staff did not follow the guidelines for "levels of use of force." *Id.* at 20. Finally, Jackson alleges that the ERT members were unnecessarily aggressive in their actions.

While the violation of department policy may be evidence that the degree or nature of force used was unlawful, § 28-1413 ultimately requires the court to make a determination that the force used was not forbidden by Neb. Rev. Stat. § 28-1408 (Reissue 2016) or Neb. Rev. Stat. § 28-1409 (Reissue 2016). As such, we need not review whether the ERT members violated department policy but only determine whether the actual force used was appropriate under the statute. Jackson had been instructed to provide his hands to be restrained. He refused and then threatened Hogan. When confronted with additional ERT members, he did not respond to them and then punched Hanner in the face. These actions led up to the use of force against him. Given the amount of force used, and Jackson's own actions leading up to it, the force used does not fall under any of the restrictions of § 28-1408 or § 28-1409. Thus, the force used was justifiable pursuant to § 28-1413 and was therefore lawful force.

Jackson also argues that the force used was excessive and, thus, that he was entitled to a self-defense instruction. While

Nebraska recognizes such instructions where arresting officers use excessive force, see *State v. Yeutter*, 252 Neb. 857, 566 N.W.2d 387 (1997), this same standard has not been applied to staff at a correctional facility. However, the force used in this case would not rise to the level necessary to meet the defendant's initial burden if such standards were applied given the justified and lawful use of force discussed above. As such, we conclude the district court did not err in finding that Jackson failed to produce sufficient evidence to warrant a self-defense jury instruction.

## Admission of Evidence

Jackson alleges that the court erred in excluding exhibit 5. Exhibit 5 consists of a video recording from a handheld camera of Jackson being transported from the SNF to his cell while strapped to a gurney. Jackson moved that the video be admitted under the rule of completeness after testimony from Hogan and Hanner regarding the aftermath of the incident. Exhibit 5 picks up recording after the alleged assault when Jackson was restrained and removed from the SNF. Jackson's attorney agreed with the district court that exhibit 5 did not show any events prior to or during the alleged assault.

Neb. Rev. Stat. § 27-106 (Reissue 2016) provides that when part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other. In the present case, the act we are concerned with is the alleged assault on Hanner which was entirely captured on another exhibit. Similarly, the events which would have impacted Jackson's claim of self-defense all occurred before or at the time of the alleged assault, thus not triggering the rule of completeness. Therefore, we determine that the district court did not abuse its discretion in excluding exhibit 5.

## Sufficiency of Evidence

Jackson argues that there was insufficient evidence to convict him of assault. He specifically argues that at the time

of the assault, he was not in control of his actions and was "reacting" to the staff members' actions, and thus, he did not intentionally or knowingly harm Hanner. Brief for appellant at 24. While Jackson did testify that he was reacting, that his actions were unintentional, and that he did not know Hanner was standing there, he also testified that he purposely swung to defend himself. In addition, Hogan said Jackson made the statement immediately prior to the alleged assault that "if you put hands on me, I am going to put hands on you." Based on this statement of Jackson's intent at the time of the alleged assault along with his later testimony, when viewed in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found that Jackson intentionally or knowingly unlawfully struck or wounded Hanner.

## Excessive Sentence

Jackson's final assignment of error is that the sentence imposed by the district court was excessive. Jackson was sentenced to 2 to 4 years' imprisonment to run consecutive to any other sentences he was serving. The statutory sentencing guidelines for a Class IIA felony has no minimum sentence and a maximum of 20 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 2016). Thus, the district court's sentence was within the statutory guidelines.

[10-12] An appellate court will not disturb sentences that are within statutory limits, unless the district court abused its discretion in establishing the sentence. *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the following factors: the defendant's age, mentality, education, experience, and social and cultural background, as well as his past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. See *id*. An abuse of discretion

takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id*.

The district court noted at the sentencing hearing that it considered Jackson's character and condition, as well as the circumstances of the crime and his history of assaults. Reviewing the relevant facts ourselves, we acknowledge Jackson's age and the extensive time that he has been in the justice system. However, we concur with the district court that Jackson's history of assaults and the circumstances surrounding the present crime necessitate a sentence of imprisonment. The district court further balanced the sentence between the seriousness of the crime and the resultant injuries in this case. As such, we determine that the district court did not abuse its discretion in sentencing Jackson to 2 to 4 years' imprisonment.

## CONCLUSION

We conclude the district court did not err in denying Jackson's request for a jury instruction on self-defense, in excluding exhibit 5 from evidence, or in the imposition of the sentence. We further conclude that there was sufficient evidence to convict Jackson of the alleged crime. The order of the district court is affirmed.

Affirmed.