STATE OF NEBRASKA, APPELLEE,
v. MATINA L. CAMPBELL, APPELLANT.

620 N.W.2d 750

Filed January 5, 2001. No. S-00-178.

Thomas J. Garvey, Sarpy County Public Defender, and Gregory A. Pivovar for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Matina L. Campbell was convicted in Sarpy County District Court of second degree trespass; possession of marijuana, less than 1 ounce; resisting arrest; and obstructing a peace officer. Campbell appeals, claiming there was insufficient evidence to convict her. We moved this case to our docket pursuant to our power to regulate the Nebraska Court of Appeals' caseload and that of this court. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## BACKGROUND

On May 21, 1999, Campbell was arrested for driving under the influence of alcoholic liquor and her car was towed to "Sterrett's Tow Lot Towing" in Bellevue, Nebraska. On Saturday, May 22, Campbell's friend, Rowena Novy, drove Campbell to the tow lot to retrieve Campbell's car. Upon arriving at the tow lot, Alvin Mitchell, a Sterrett's Tow Lot Towing employee, informed Campbell that she could not retrieve her car without obtaining the proper paperwork from the Bellevue Police Department. Mitchell told Campbell that she would not be able to get this paperwork until Monday. Campbell became upset and began shouting at Mitchell. Mitchell then told Campbell that she needed to leave. However, Campbell locked herself in her car and refused to leave. Campbell was unable to drive her car away from the tow lot because a tow truck was parked in front of her car.

Mitchell and Novy tried to convince Campbell to get out of the car, but Campbell refused. Mitchell then called police. Sgt. David Rech arrived at the tow lot and attempted to talk Campbell into getting out of her car. Rech told Campbell that she would not be arrested if she left the premises peacefully, but Campbell refused to exit the car. Rech called for backup, and Officer Mark Brazda arrived at the scene shortly thereafter.

Eventually, Campbell got out of the car. Rech told Campbell she was under arrest. Campbell then attempted to give her purse to Novy, but the officers did not allow her to do so. The two officers attempted to handcuff Campbell to take her into custody, but Campbell resisted. Campbell began screaming, swinging her

arms, thrashing violently, and trying to break away from the officers. Brazda then performed a maneuver called a "straight arm bar take down," which resulted in Campbell's and both officers' falling to the ground. While the officers continued in their efforts to handcuff Campbell, Rech realized his finger was injured and that he could no longer assist in handcuffing Campbell. The officers then began to lose control of Campbell as she attempted to get up. Rech sprayed Campbell with pepper spray, and eventually Brazda was able to handcuff Campbell.

A rescue squad was called. Photographs taken at the scene depict Rech's severely dislocated finger and cuts and scrapes to Rech's knees which he suffered as a result of the scuffle.

Campbell was taken to the Sarpy County jail. While conducting a search of Campbell's effects, Brazda found a marijuana cigarette and some "Zig-Zag" rolling papers in Campbell's purse. During an interview conducted by Brazda at the jail, Campbell stated that she was upset about not being able to get her car out of impound but that she did not intend to injure Rech.

Campbell was charged with third degree assault on a police officer under Neb. Rev. Stat. § 28-931 (Cum. Supp. 2000); second degree trespass under Neb. Rev. Stat. § 28-521 (Reissue 1995); possession of marijuana, less than 1 ounce under Neb. Rev. Stat. § 28-416(13) (Cum. Supp. 1998); drug paraphernalia under Neb. Rev. Stat. § 28-441 (Reissue 1995); resisting arrest under Neb. Rev. Stat. § 28-904 (Cum. Supp. 2000); and obstructing a peace officer under Neb. Rev. Stat. § 28-906 (Reissue 1995). Campbell pled not guilty to all counts. Trial was to the court without a jury on December 1 and 3, 1999.

At trial, Mitchell testified that before Campbell got inside her car and locked the door, he told Campbell that she needed to leave the tow lot. Novy also testified that Mitchell told Campbell to leave, but Campbell refused and instead locked herself in her car.

There was some dispute in the testimony as to when Campbell was first informed that she was under arrest. Rech testified that Campbell got out of the car and that he told her she was under arrest. Rech testified that Campbell then got back in the car, slammed the door, and locked herself in again. Rech further stated that Campbell then got back out of the car. At that

time, he again informed her that she was under arrest and a scuffle then ensued. Brazda and Novy testified that Campbell got out of the car on only one occasion and was then told she was under arrest. The testimony is not disputed, however, that Campbell was told prior to the officers' attempts to handcuff her that she was under arrest. Both officers testified that during the scuffle, they told Campbell to stop resisting. However, Novy testified she did not recall hearing the officers tell Campbell to stop resisting.

During his testimony, Brazda described the specialized training he had received regarding the detection of controlled substances, including marijuana. Brazda testified that he had received 24 weeks of basic training, which included detection of controlled substances violations. He also had received "DEA schooling," which dealt with basic apprehension and detection of controlled substances violations, attended a "drug interdiction and criminal interdiction school" instructed by the Nebraska State Patrol, and attended a "drug interdiction and criminal interdiction course" instructed by the Nebraska Office of Highway Safety. Marijuana was one of the controlled substances covered by each of these programs. Brazda further testified that he had acted as an undercover narcotics officer for 6 months, during which time he purchased controlled substances on a day-to-day basis. Brazda testified that through his training and experience, he had smelled marijuana, had seen marijuana, and had observed the manner in which marijuana is used. Brazda testified that the cigarette found in Campbell's purse was marijuana. Campbell objected to this testimony, asserting that Brazda lacked foundation to testify that the substance was in fact marijuana. The court overruled the objection.

The court found Campbell guilty of second degree trespass; possession of marijuana, less than 1 ounce; resisting arrest; and obstructing a peace officer. The court found Campbell not guilty of third degree assault on a police officer and possession of drug paraphernalia, determining that the State had not met its burden of proof as to those charges.

On January 28, 2000, Campbell was sentenced to 90 days in jail for trespassing, 270 days in jail for resisting arrest, 270 days in jail for obstructing a peace officer, and a $100 fine for mari-

juana possession, plus costs. The jail sentences were to be served concurrently.

On February 16, 2000, Campbell filed a notice of appeal and a poverty affidavit stating that "she is indigent and cannot pay the costs on appeal." Campbell's affidavit did not include a statement of the nature of the action, defense, or appeal, or a statement that she believed she was entitled to redress. The district court granted Campbell leave to proceed in forma pauperis.

## ASSIGNMENT OF ERROR
Campbell claims, restated, that the district court erred in determining that the evidence was sufficient to find her guilty beyond a reasonable doubt on each of the four counts.

## STANDARD OF REVIEW
■ A conviction in a bench trial of a criminal case is sustained if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. *State v. Lara*, 258 Neb. 996, 607 N.W.2d 487 (2000); *State v. Blackman*, 254 Neb. 941, 580 N.W.2d 546 (1998). In making this determination, an appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented, which are within a fact finder's province for disposition. *Blackman, supra.*

## ANALYSIS

### JURISDICTION
■ Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. McCracken, ante* p. 234, 615 N.W.2d 902 (2000). The State claims this court lacks jurisdiction over Campbell's appeal. The State asserts that although Campbell filed an affidavit, she failed to file an "application" as required by Neb. Rev. Stat. § 25-2301.01 (Cum. Supp. 2000), which states:

> Any county or state court, except the Nebraska Workers' Compensation Court, may authorize the commencement, prosecution, defense, or appeal therein, of a civil or criminal case in forma pauperis. An application to proceed in forma pauperis shall include an affidavit stating that the

affiant is unable to pay the fees and costs or give security required to proceed with the case, the nature of the action, defense, or appeal, and the affiant's belief that he or she is entitled to redress.

■ The only requirement of an "application" to proceed in forma pauperis is that such application "include an affidavit stating that the affiant is unable to pay the fees and costs or give security required to proceed with the case, the nature of the action, defense, or appeal, and the affiant's belief that he or she is entitled to redress." § 25-2301.01. We determine that as long as the poverty affidavit itself includes some indication that a defendant is requesting or applying for in forma pauperis status, § 25-2301.01 does not require that a separate application be filed in addition to the poverty affidavit. Campbell's affidavit includes both a statement that Campbell "cannot pay the costs on appeal," and a statement that she "requests that the costs of the appeal be borne by Sarpy County, Nebraska." Thus, this court does not lack jurisdiction due to Campbell's failure to file an application separate from the affidavit.

■ The State additionally claims that the poverty affidavit Campbell filed is insufficient because it did not include a statement of the nature of the action, defense, or appeal, or a statement that she believes she is entitled to redress. The State claims that Campbell's failure to comply with these additional requirements of § 25-2301.01 prevents the court from obtaining jurisdiction. In *State v. Dallmann, ante* p. 937, 621 N.W.2d 86 (2000), we determined that if a district court grants leave to proceed in forma pauperis, this court obtains jurisdiction when the notice of appeal is filed and that failure of the affidavit to state the nature of the action or that the affiant is entitled to redress does not divest this court of jurisdiction. The State's contention is without merit.

■ The State next claims this court lacks jurisdiction over Campbell's appeal because Campbell's brief does not contain a statement of the basis of jurisdiction as required by Neb. Ct. R. of Prac. 9D(1)c (rev. 2000). Jurisdiction is vested in this court through the state Constitution and the Legislature, Neb. Const. art. V, § 2, and Neb. Rev. Stat. § 24-204 (Reissue 1995). Although failure to comply with court rules may in some

instances result in this court's not considering an issue raised in the appeal, see *State v. Feiling*, 255 Neb. 427, 585 N.W.2d 456 (1998) (court will not consider claim that statute is unconstitutional when party failed to file notice required by rule 9E), failure to comply with rule 9D(1)c is not jurisdictional and therefore does not divest this court of jurisdiction. The State's claim that this court lacks jurisdiction due to Campbell's failure to include a jurisdictional statement in her brief is also without merit.

## SUFFICIENCY OF EVIDENCE

Having determined that Campbell's appeal is properly before this court, we now address Campbell's claim that the district court erred in determining that the evidence was sufficient to find her guilty beyond a reasonable doubt. Campbell first contends that no one told her she was to leave the tow lot premises and that therefore there is insufficient evidence to support the trespassing conviction. However, since both Mitchell and Novy testified that Mitchell told Campbell to leave the premises and that Campbell refused, the evidence was sufficient to find Campbell guilty of trespass.

With regard to the possession charge, Campbell asserts there was insufficient foundation for Brazda to testify that the substance he found in Campbell's purse was marijuana. This argument is also without merit. Whether a witness is qualified as an expert is a preliminary question for the trial court. *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992). A trial court is allowed discretion in determining whether a witness is qualified to testify as an expert, and unless the court's finding is clearly erroneous, such a determination will not be disturbed on appeal. *Norman v. Ogallala Pub. Sch. Dist.*, 259 Neb. 184, 609 N.W.2d 338 (2000). See, also, *Stahl, supra*. A person may qualify as an expert by virtue of either formal training or actual practical experience in the field. *Stahl, supra*.

A law enforcement officer who has practical experience, received training, or participated in drug investigations involving the identification of marijuana may testify as to whether a substance in question is marijuana. *Stahl, supra; State v. Hoxworth*, 218 Neb. 647, 358 N.W.2d 208 (1984). Brazda testified that he had received specialized training in detection of con-

trolled substances and had acted as an undercover narcotics officer, both of which involved the identification of marijuana. Through Brazda's training and experience, he had observed marijuana and had observed the manner in which marijuana is used. The trial court's determination that there was sufficient foundation for Brazda to testify that the cigarette found in Campbell's purse was marijuana was not clearly erroneous.

On the charge of resisting arrest, Campbell claims that "the testimony is in conflict as to the timing of the announcement of the Appellant's arrest." Brief for appellant at 9. Campbell further claims Novy testified that "she did not hear the officers once tell the Appellant to stop resisting." *Id.* These claims are also meritless. Both Novy and the two officers testified that Campbell was told prior to the officers' attempts to handcuff Campbell that she was under arrest. Furthermore, Novy did not testify as to whether the officers told Campbell to stop resisting; she simply testified that she was not sure what the officers said to Campbell because "there was a lot of yelling."

Contrary to Campbell's assertions, the evidence clearly shows that Campbell resisted handcuffing and struggled with the officers after she had been informed that she was under arrest. This evidence is sufficient to support Campbell's conviction for resisting arrest. See *State v. Blair*, 230 Neb. 775, 433 N.W.2d 518 (1988) (evidence that defendant struggled, resisted handcuffing, and that it took 10 to 15 minutes to arrest defendant is sufficient to support conviction for resisting arrest).

Finally, Campbell claims that because the officers' conduct instigated Campbell's conduct, Campbell cannot be found guilty of obstructing a peace officer. Evidence showing that a defendant resisted handcuffing, struggled with an officer, and continued to resist restraint are alone sufficient to sustain a conviction for obstructing a peace officer. *State v. Lynch*, 223 Neb. 849, 394 N.W.2d 651 (1986). In the present case, undisputed evidence shows that Campbell resisted being handcuffed and struggled with the officers. Such evidence is sufficient to sustain Campbell's conviction.

There was sufficient evidence to find Campbell guilty beyond a reasonable doubt on all four counts, and Campbell's claims to the contrary are without merit.

## CONCLUSION

For the above-stated reasons, Campbell's convictions on all counts are affirmed.

AFFIRMED.