# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1480

_____

United States of America,           *
                                     *
            Appellee,                *
                                     *   Appeal from the United States
      v.                             *   District Court for the
                                     *   District of Nebraska.
Claude Sledge, III, also known       *
as Desmond Fowler,                   *
                                     *
            Appellant.               *

_____

Submitted: June 14, 2006
Filed: September 7, 2006

_____

Before BYE, LAY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Claude Sledge III (Sledge) conditionally pled guilty to possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1), and to criminal forfeiture, in violation of 21 U.S.C. § 853, reserving the right to appeal the district court's[1] order denying Sledge's motion to

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, adopting the recommendation of the Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

suppress. On appeal, Sledge challenges the denial of his suppression motion. We affirm.

## I.  BACKGROUND

### A.  Factual Background

On May 5, 2005, Lincoln (Nebraska) Police Department (LPD) Officer Robert Smith (Officer Smith) was conducting surveillance of a liquor store from his police cruiser, which was located in a used car lot near the store. Around 12:15 a.m., Officer Smith observed a car pull into the liquor store's front parking lot. Officer Smith saw a young man, who appeared to be "in his early 20s or close to 20," exit the car's front passenger seat and enter the liquor store.

While the young man was inside the liquor store, another car arrived at the store parking lot and parked two stalls to the right of the first car. The young man exited the store shortly after entering and returned to the first car empty-handed. The second car's driver, later identified as Tetus Therien (Therien), then walked over to the first car's passenger side. Officer Smith observed Therien engage in a conversation and shake hands with, or possibly take "money or something" from, someone sitting in the first car. Therien then entered the liquor store and, a short time later, exited the store carrying what appeared to be an eighteen-pack of beer. Following another brief "hand-exchange," Therien handed the beer inside the first car's open right rear passenger door and returned to the second car.

Believing he had just witnessed the illegal procurement of alcohol for a minor, Officer Smith drove his cruiser across the street and parked behind the first car, preventing it from leaving. Officer Smith approached the open passenger side window of the first car and asked the driver, nineteen-year-old Jennifer Carriker (Carriker), for her identification. Upon doing so, Officer Smith recognized Sledge and another man, Fred Baxter (Baxter), sitting in the car's back seat. Officer Smith had arrested both men on earlier occasions, and recalled LPD had active broadcasts on

them for unrelated violations, which Officer Smith confirmed by police radio.[2] Officer Smith radioed for assistance, and within minutes five additional officers arrived at the scene, including LPD Officers John Clarke (Officer Clarke) and Kocian (Officer Kocian).

After instructing Baxter to exit the car to talk about a broadcast regarding Baxter, Officer Smith directed Officer Clarke to stand near the car's left rear door in case Sledge attempted to get out and run. While talking to Baxter, Officer Smith heard Officer Clarke ask Sledge to get out of the car. A few moments later, Officer Smith saw Officer Clarke begin a pat-down search on Sledge, who had his back toward Officer Clarke. Officer Smith then observed Sledge "turn to try and run away, and Officer Clarke grabbed him," resulting in a struggle between Officer Clarke, Officer Kocian, and Sledge. A third officer ran over, and the four individuals fell to the ground. When the officers returned Sledge to a standing position, he was handcuffed.

The officers placed Sledge under arrest for failing to comply and for resisting arrest. While searching Sledge incident to the arrest, officers located in Sledge's left front pants pocket $229 in cash and two baggies containing an off-white substance, and located a similar baggie containing an off-white substance in Sledge's right front pants pocket. The substances field-tested positive for cocaine base (crack cocaine).

### B.     Procedural Background

Sledge was indicted for possession with intent to distribute more than five grams of cocaine base and for criminal forfeiture. Sledge moved to suppress the crack cocaine. During the suppression hearing, Officer Clarke testified he was familiar with Sledge from earlier contacts, and given Sledge's history of verbal and physical resistive behavior, Officer Clarke was concerned Sledge may become violent during

---

[2]LPD had two active broadcasts concerning Sledge: (1) a broadcast to issue a citation to Sledge for possession of marijuana, a misdemeanor infraction; and (2) a broadcast to interview Sledge regarding a disturbance.

the encounter in May 2005. Officer Clarke also testified Sledge became angry when informed the officers needed to talk to Sledge about his broadcasts. Officer Clarke asked if he could pat Sledge down, and Sledge responded in the affirmative. Sledge initially complied with Officer Clarke's request to turn around and to put his hands up. However, once Officer Clarke began the pat down, Sledge "threw his arms down." Officer Clarke again asked Sledge to raise his hands, which Sledge initially did, but Sledge put his arms down again. Officer Kocian then grabbed Sledge. Sledge started "twitching and moving and keeping his left arm down," and then "took off running." According to Officer Clarke, Sledge ran approximately five yards before he was apprehended, taken to the ground, handcuffed, and placed under arrest.

In contrast, Sledge testified Officer Clarke did not ask permission to conduct the pat-down search, but simply ordered Sledge to turn around. Sledge also testified Officer Clarke began digging in Sledge's left front pants pocket after the pat down and began questioning Sledge about how much money he had. Sledge told Officer Clarke to stop digging in his pocket and then "brushed" Officer Clarke's hand and tried to get away from him, at which time Sledge was taken to the ground.

Additionally, Carriker testified she did not hear Officer Clarke ask Sledge for consent to the pat-down search. Carriker further testified: (1) after the pat-down search began, Sledge's arms "moved down as if he was uncomfortable with it, and the officers were telling him to put his arms back up"; (2) the officers "were being very aggressive"; (3) Sledge tried to get away from the officers, but only took two or three steps before the officers took him to the ground; and (4) Sledge attempted to get away from the officers twice.

Following the suppression hearing, the magistrate judge recommended denying the motion, concluding (1) Officer Smith had reasonable suspicion to investigate whether alcohol had been procured for a minor and also had reasonable grounds to detain Sledge based on the active broadcasts; (2) Sledge initially complied with the pat-down search, although the evidence was unclear whether Sledge gave verbal

consent; (3) Officer Clarke could perform the pat-down search without consent because he had cause to fear for his safety; (4) Sledge tried to run away from the officers; and (5) the officers acted reasonably in apprehending Sledge and restraining him with handcuffs.

After conducting a de novo review, the district court adopted the magistrate judge's recommendation, concluding both the detention and pat-down search of Sledge were unlawful, but Sledge's resistance provided probable cause to arrest Sledge under Nebraska law for obstructing a peace officer and thus allowed the officers to conduct a search incident to the arrest. Following Sledge's conditional guilty plea, the district court sentenced Sledge to 70 months' imprisonment and 4 years' supervised release, as well as forfeiture of $229.

On appeal, Sledge renews his challenge to the search incident to the arrest, arguing the officers unlawfully detained, pat-searched, and physically restrained him, and that Sledge's actions, whether or not a violation of state law, did not remove the taint of the illegal arrest.

## II. DISCUSSION

"When considering a suppression order, we review the district court's factual findings for clear error and review de novo its conclusion about whether the Fourth Amendment was violated during the search." United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004) (citation omitted). Under this standard, "we must affirm the district court's decision on a suppression motion unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, [we are] left with the definite and firm conviction that a mistake has been made." Id. (internal quotation omitted).

"In our circuit, resistance to an illegal arrest can furnish grounds for a second, legitimate arrest." United States v. Schmidt, 403 F.3d 1009, 1016 (8th Cir. 2005); see, e.g., United States v. Dawdy, 46 F.3d 1427, 1431 (8th Cir. 1995) (holding "a

defendant's response to even an invalid arrest . . . may constitute independent grounds for arrest"). "When a defendant commits a new and distinct crime during an unlawful detention, the Fourth Amendment's exclusionary rule does not bar evidence of the new crime." United States v. Hunt, 372 F.3d 1010, 1012, (8th Cir. 2004). "A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." United States v. Bailey, 691 F.2d 1009, 1017 (11th Cir. 1982) (holding "police may legally arrest a defendant for a new, distinct crime, even if the new crime is in response to police misconduct and causally connected thereto").

In denying Sledge's motion to suppress, the district court concluded Sledge forfeited any Fourth Amendment protection by resisting and running away from the officers, thus creating probable cause to arrest Sledge for obstructing a peace officer, in violation of Neb. Rev. Stat. § 28-906(1), and to search Sledge incident to that arrest. We agree with this conclusion.

Under Nebraska law, "A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders . . . the enforcement of the penal law . . . by a peace officer . . . acting under color of his or her official authority." Neb. Rev. Stat. § 28-906(1). The mere act of running away from law enforcement officers constitutes physical interference or obstacle within the meaning of this provision. In re Interest of Richter, 415 N.W.2d 476, 478 (Neb. 1987). The district court found it was undisputed Sledge tried to run away, and this finding is not clearly erroneous. Officers Smith and Clarke, as well as Carriker, testified Sledge tried to run away, and Sledge admitted on direct examination he "tried to get away from" Officer Clarke. Furthermore, we agree with the district court, the officers were engaged in "the enforcement of the penal law" during the encounter by detaining Sledge for issuance of a citation pursuant to the police broadcasts. Thus, by running

away from the officers, Sledge committed a new, distinct crime, thereby permitting the officers lawfully to arrest him.[3]

Additionally, probable cause existed to arrest Sledge for resisting arrest under Neb. Rev. Stat. § 28-904(1)(a), which provides:

> A person commits the offense of resisting arrest if, while intentionally preventing or attempting to prevent a peace officer, acting under color of his or her official authority, from effecting an arrest of the actor or another, he or she . . . [u]ses or threatens to use physical force or violence against the peace officer or another.

The district court concluded, "Without some description of Mr. Sledge's actions after he tried to run away, [the court] cannot find that he was forcefully resisting the officers." We disagree. The record demonstrates, while Officer Clarke attempted to pat down Sledge, Officer Kocian grabbed Sledge. This action constituted an actual seizure of Sledge's person, or, in other words, an arrest.[4] Officer Smith testified he saw Sledge try to run away, and also saw Officer Clarke grab Sledge, resulting in "a struggle between Officer Clarke, Officer Kocian, and Mr. Sledge." Officer Smith then observed a third officer run over to the group, and testified the four individuals "went down to the ground in a pile." In describing Sledge's actions, Officer Clarke testified that during the encounter Sledge (1) "was yelling, screaming, upset and irate when he

---

[3]Although Sledge was arrested for failing to comply and resisting arrest, rather than obstructing a peace officer, the officers' "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996); see, e.g., United States v. Clarke, 110 F.3d 612, 614 (8th Cir. 1997) ("In analyzing [the defendant's] arrest under the fourth amendment, we . . . ignore the officers' subjective intentions and focus solely on the objective question of whether probable cause existed." (citations omitted)). The relevant inquiry is whether probable cause existed to arrest Sledge for *some crime*, and here we answer that question in the affirmative.

[4]Indeed, Sledge argued before the district court Officer Kocian was effecting an arrest when he grabbed Sledge.

was arrested"; (2) made several threats after he was arrested and handcuffed; (3) "wasn't very cooperative in that he was moving his arms"; and (4) exhibited "resistive angry behavior." Carriker testified Sledge attempted to get away from the officers twice, and stated "the first time handcuffs were not used," but "[t]he second time, they were." On these facts, probable cause existed to believe Sledge was resisting arrest. See State v. Campbell, 620 N.W.2d 750, 757 (Neb. 2001) (holding an arrestee who resists being handcuffed and struggles with officers may be convicted of resisting arrest under Nebraska law).

Thus, even assuming *arguendo* the detention and pat-down search of Sledge were invalid–a conclusion we need not reach today–Sledge's actions provided independent grounds for his arrest. Because the officers lawfully could arrest Sledge for obstructing a peace officer under Neb. Rev. Stat. § 28-906, or for resisting arrest under Neb. Rev. Stat. § 28-904, the district court correctly held the crack cocaine discovered in the search incident to that lawful arrest is admissible.

## III. CONCLUSION

We affirm the judgment of the district court denying Sledge's motion to suppress.

_____