IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. HOSCHEIT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BILLY R. HOSCHEIT, APPELLANT.

Filed December 3, 2019.    No. A-18-1205.

Appeal from the District Court for Pierce County: JAMES G. KUBE, Judge. Affirmed.

Nathan J. Stratton, of Stratton, DeLay, Doele, Carlson, Buettner & Stover, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Billy R. Hoscheit appeals from his convictions and sentences in the district court for Pierce County for third degree assault on an officer, resisting arrest, obstructing a peace officer, and disobeying a patrol officer. On appeal, he challenges the sufficiency of the evidence to convict him of all four charges and the court's failure to give his requested self-defense jury instruction. He also asserts that he received ineffective assistance of trial counsel in various regards. For the reasons set forth herein, we affirm.

## II. BACKGROUND

On May 30, 2018, the State filed an information in the district court, charging Hoscheit with third degree assault on an officer under Neb. Rev. Stat. § 28-931(1) (Reissue 2016), a Class IIIA felony; resisting arrest under Neb. Rev. Stat. § 28-904 (Reissue 2016), a Class I misdemeanor;

- 1 -

obstructing a peace officer under Neb. Rev. Stat. § 28-906 (Reissue 2016), a Class I misdemeanor; and disobeying a patrol officer under Neb. Rev. Stat. § 81-2008 (Reissue 2014), a Class III misdemeanor.

A jury trial was held on October 22-23, 2018. The State presented testimony from two law enforcement officers involved in this case. The district court received into evidence exhibits offered by the parties, including various photographs of the scene and of the injuries to one officer's face, as well as a copy of video recordings of the incident in question and screenshots taken from the video.

On December 25, 2017, while on duty, Nebraska State Patrol Trooper Brandon Viterna investigated a traffic accident. Viterna testified that through "multiple calls [his] dispatch placed for the registered owner," the identities of both the owner and the driver of the vehicle were determined. The registered owner was a woman with whom Viterna was familiar, and the woman advised dispatch that the driver was another woman whom Viterna did not know. Additionally, Viterna learned from "[his] dispatch" that the owner of the vehicle and Hoscheit had informed the dispatcher that the driver "was okay from the accident" but that they were not "going to provide the information of where she was located." Viterna was unable to locate the driver on December 25, but due to the prior contacts that day, he suspected that the driver might be at Hoscheit's residence. Accordingly, at the start of his shift on December 26, he decided to go to Hoscheit's residence to see if he could speak with the driver there.

Upon approaching Hoscheit's residence, Viterna observed Hoscheit and two women exit a vehicle and make their way toward the residence. Viterna testified that Hoscheit communicated something to the women, who "proceeded quickly" into the residence, which prompted Viterna to roll through a stop sign "in an attempt to get into the driveway to make contact with [the driver in question] prior to her getting into the residence." As Viterna drove closer to the residence, he saw Hoscheit walk back to the parked vehicle, retrieve a machete from the passenger area of the vehicle, and unsuccessfully attempt to pull the machete out of the sheath a couple of times.

The State offered into evidence a DVD containing video footage recorded by the camera in Viterna's patrol car. The first video clip shows Viterna driving towards Hoscheit's residence, roll through the stop sign, and pull into Hoscheit's driveway right after the sound on the video starts. Hoscheit can be seen reaching into the parked vehicle as Viterna pulls into the driveway and walking towards Viterna empty handed once Viterna's vehicle stops. The video quality is poor, but Viterna can clearly be heard asking Hoscheit why he was grabbing a machete, to which there is no direct response from Hoscheit. Hoscheit asked Viterna what he wanted.

The first video clip shows Viterna with his right hand in the vicinity of his holstered pistol as he approaches Hoscheit. Viterna states, "I want to talk to--" before being cut off by Hoscheit, who yells, "Get your hand off your gun. Get off my property right now . . . you have a warrant or get your hand off that fucking weapon." Viterna then tells Hoscheit "shut your ass," after which Hoscheit moves quickly towards Viterna while continuing to yell and curse. Viterna can be seen striking Hoscheit on the right side of his head with his right closed fist, and a scuffle ensues.

At that point the first video clip shows a woman, who runs out of the house exclaiming "what the fuck, oh my god" and tries to separate Hoscheit and Viterna. Viterna then radios for backup just before Hoscheit repeatedly tells him to "get the fuck off [his] property." Viterna then tells Hoscheit to get on the ground, which Hoscheit does not do. Viterna also repeats his request

to speak with someone at the residence. After further similar exchanges, including Hoscheit yelling "you want to assault me" and Viterna responding "shut up," Viterna tells Hoscheit to get the dog [who was on the scene] back in the house, and Hoscheit responds, "Fuck you. This is my dog on my place."

Eventually, a second woman comes out of the residence and responds affirmatively to Viterna's inquiry of whether she was involved in the accident the previous night. During this exchange, Hoscheit continues to yell and demand that Viterna leave. The second woman asks Viterna to move his vehicle off the property and states that she will meet him so they can talk. While Viterna moves to his vehicle, the video shows Hoscheit following close behind Viterna, continuing his demands that Viterna leave and calling him a "motherfucker." The video then shows Viterna backing his vehicle off the driveway while Hoscheit walks close in front of it continuing to yell at Viterna.

After this first video clip was played for the jury, Viterna's testimony resumed. Viterna stated that after the events captured in that video clip, he was able to speak with the two women at the scene without incident. Viterna identified the women by name during his testimony, indicated that the second woman shown in the video was the individual he was looking for, and described both women as cooperative. Viterna characterized his action in hitting Hoscheit as an unsuccessful attempt to deliver a "brachial strike," a technique troopers are trained in, which is intended to "stun or disorient an individual." Viterna testified that his attempt was not successful due to "the fluidity of the situation," resulting in the strike being delivered "a little high" and landing on the side of Hoscheit's head rather than his neck. Viterna testified that during the subsequent struggle, Hoscheit hit him on his left cheek, just below his eye. Viterna's injuries were later photographed and documented at a hospital. The hospital examination revealed "some minor swelling and redness" of his cheek and showed that his eye was "somewhat bloodshot in the corner." Hospital personnel recommended treatment with ibuprofen and ice if needed.

Viterna testified that he informed Hoscheit he was under arrest prior to the arrival of other law enforcement officers. Viterna stated that he "was instructing Hoscheit to get on the ground because he was under arrest" but that Hoscheit did not comply, continued to "yell over the top of" Viterna, and ignored Viterna's orders. Viterna indicated that three additional officers from three other law enforcement agencies, including Pierce County Sheriff Rick Eberhardt, arrived between 5 and 15 minutes after Viterna's call for backup. While Hoscheit walked back and forth in his yard and entered and exited the residence once or twice, Viterna briefed the other officers on the situation, including the fact that Hoscheit had hit him.

Eventually, the group of officers, led by Eberhardt, attempted to make contact with Hoscheit to place him under arrest. Hoscheit responded by going into his residence and locking himself inside. According to Viterna, Eberhardt led Viterna and a third officer to another door to gain access. Hoscheit declined Eberhardt's request to come out voluntarily. After some negotiation, Eberhardt kicked the door open, but Hoscheit slammed it shut and "resecured [it] somehow." After further brief negotiation, Eberhardt kicked the door down again, and the officers entered, giving Hoscheit "multiple orders to get on the ground," which he refused. According to Viterna, the officers collectively tried to take control of Hoscheit, but he "continued to resist and kick." Eventually, the officers gained control of Hoscheit and placed him in handcuffs.

A second video clip containing audio of the officers' entry into the residence and their confrontation with and arrest of Hoscheit was played for the jury (the video portion of this clip only shows the outside of the residence). In the second clip, Hoscheit can be heard asking multiple times if he is under arrest, to which an officer responds that he is and tells him to come out. When Hoscheit asks why he is under arrest, an officer responds "did you hear the cop?" followed by a long pause and the officer's response of "then you know why, Billy." In response to another request for Hoscheit to come out, he can be heard responding that "if I struck an officer it was in [inaudible] of myself." After further instructions to come out of the residence, Hoscheit responds that he "consider[s] the arrest for an assault on an officer who was trespassing and who assaulted [him] first illegal," and he states that he "will resist [inaudible] arrest." Hoscheit subsequently stated that "he came here without warrant on my property . . . and then he assaulted me . . . he should've left when he was told to . . . he can't come on my property and give me orders." The officers can then be heard breaching the door and subduing Hoscheit.

After the second clip was played for the jury, Viterna confirmed that he did not have a warrant prior to his encounter with and arrest of Hoscheit, but he noted that there are occasions when law enforcement officers can arrest individuals without a warrant. Viterna also indicated that his attempts to communicate with Hoscheit were largely fruitless because Hoscheit just continued to "talk over and yell over and was not listening to rational discussion." Viterna also testified that he was unable to visit with the driver relevant to his accident investigation without Hoscheit's interruption until they left Hoscheit's property. He testified that as a member of the Nebraska State Patrol, he gave Hoscheit orders which he did not obey.

On cross-examination, Viterna agreed that he was the first to use force during the confrontation with Hoscheit and that he had done so after Hoscheit asked him to leave. Viterna reviewed individual screenshots taken from the first video clip, and he agreed that just prior to the scuffle Hoscheit had approached Viterna with his hands held down at his sides. On redirect, Viterna confirmed his observation of Hoscheit retrieving a machete from inside the vehicle, which gave Viterna an elevated concern for his safety. Viterna also testified that during the period depicted in the screenshots he was shown on cross-examination, he had been standing still while Hoscheit had been moving around, yelling, clenching his fists, and "blowing out his chest, acting aggressive" as he approached Viterna.

Eberhardt testified that upon his arrival at Hoscheit's residence, he observed that three other officers were already present and that Hoscheit was standing in the front yard. When Eberhardt got out of his car, Hoscheit yelled and screamed at him, and Eberhardt told him to be quiet. Eberhardt then spoke with the other officers, and Viterna told Eberhardt that Hoscheit struck Viterna while he was there investigating another case. Viterna also informed Eberhardt that he was trying to arrest Hoscheit. Eberhardt then described the officers' efforts to effectuate Hoscheit's arrest, and his account was consistent with both Viterna's description and the audio portion of the second video clip. Eberhardt testified that when the door to the residence first opened, he observed Hoscheit with a black object in his hand, which Eberhardt thought was a firearm, before the door slammed shut again. Eberhardt alerted the other officers to the possible presence of a firearm and told Hoscheit he was under arrest. Eberhardt testified that it required all four officers present to gain control of Hoscheit once the door opened the second time and they were inside the residence. On cross-examination, Eberhardt testified that he did not believe Viterna had disclosed Hoscheit's

request for Viterna to leave the property prior to Hoscheit's assault of Viterna, but he could not recall for certain.

After the State rested, Hoscheit's attorney made an oral motion to dismiss the obstruction charge which the district court denied. Hoscheit then rested without presenting any evidence, and his attorney renewed the motion to dismiss, arguing at that point that he had been addressing his prior motion to all four counts and had just argued "a little more vigorously" with respect to the obstruction charge. The court overruled Hoscheit's renewed motion.

During the jury instruction conference, Hoscheit's attorney objected to the jury instruction with respect to the elements of the crimes charged, asking the district court to include "self-defense language" in that jury instruction. The court overruled Hoscheit's objection, stating that "insufficient evidence . . . has come out during the trial that would require the giving of an instruction on self-defense." The court stated further:

> I believe that the evidence indicated that [Hoscheit] initiated aggressive behavior toward Trooper Viterna by physically approaching him and getting close to him and yelling directly in his face. Additionally, the officer at that point was not effecting an arrest.
>
> Therefore, I think that the . . . affirmative defense of self-defense is not appropriate. However, I do believe that the affirmative defense of defense of property is appropriate and that's why I have included that in the elements section . . . of Instruction number 4 [concerning the elements of the crimes charged].

The jury found Hoscheit guilty on all four counts. The district court accepted the jury's verdicts and convicted Hoscheit of third degree assault on an officer, resisting arrest, obstructing a peace officer, and disobeying a patrol officer. Subsequently, the court sentenced Hoscheit to a concurrent term of 24 months' probation for those convictions.

## III. ASSIGNMENTS OF ERROR

Hoscheit asserts, reordered, that (1) the district court erred by failing to give his requested self-defense jury instruction; (2) the evidence was insufficient to convict him on each of the charges; and (3) he received ineffective assistance when his attorney did not allow him to testify, did not call any witnesses, did not subpoena witnesses Hoscheit wanted to call in his favor, did not subpoena phone calls made by Hoscheit to the Pierce County Sheriff's Department, did not present any evidence at trial, and did not present a self-defense argument at trial.

The Nebraska Supreme Court has recently held that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). While portions of Hoscheit's assignment of error as to ineffective assistance of counsel arguably do not conform to this rule, the brief in this case predates *Mrza* and the specific issues complained of are readily discernable from the argument section of his brief. We therefore address those portions of his assignment of error relating to ineffective assistance of trial counsel that he also specifically argues in his brief. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Hartzell*, 304 Neb. 82, 933 N.W.2d 441 (2019).

## IV. STANDARD OF REVIEW

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Schmaltz*, 304 Neb. 74, 933 N.W.2d 435 (2019). Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination. *Id.*

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. SELF-DEFENSE JURY INSTRUCTION

Hoscheit asserts that the district court erred by failing to give his requested self-defense jury instruction.

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Schmaltz, supra.*

To successfully assert the claim of self-defense, one must have a reasonable and good faith belief in the necessity of using force. *State v. Golka*, 281 Neb. 360, 796 N.W.2d 198 (2011). In addition, the force used in defense must be immediately necessary and must be justified under the circumstances. *Id.* See, also, Neb. Rev. Stat. § 28-1409 (Reissue 2016) (concerning use of force in self-protection). A trial court must instruct the jury on the issue of self-defense when there is any evidence adduced which raises a legally cognizable claim of self-defense. *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006). If the trial evidence does not support a claim of self-defense, the jury should not be instructed on it. *Id.*

In prosecutions for assaulting an officer, obstructing a peace officer, or resisting arrest, a trial court must instruct the jury on the issue of self-defense when there is any evidence adduced which raises a legally cognizable claim that the police officer used unreasonable force in making the arrest. *State v. Yeutter*, 252 Neb. 857, 566 N.W.2d 387 (1997). Reasonable force, which may be used by an officer making an arrest, is generally considered to be that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer,

would deem necessary under the circumstances. *Waldron v. Roark*, 298 Neb. 26, 902 N.W.2d 204 (2017). The inquiry into the reasonableness of a use of force assesses reasonableness at the moment of the use of force, as judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.*

In this case, the trial evidence did not support a claim of self-defense. The evidence shows that Hoscheit was reaching into a vehicle as Viterna pulled into Hoscheit's driveway and that Hoscheit was pulling out a machete from the vehicle although he was empty-handed when he began walking toward Viterna. In turn, Viterna placed his hand on his gun and inquired about the machete he had observed Hoscheit grabbing. Hoscheit became combative, ordered the officer off his property, and continued to approach him in a threatening manner. Viterna attempted to subdue Hoscheit due to fear for his safety, but his attempt to use a brachial strike technique based upon his officer training was unsuccessful, and Viterna actually struck the side of Hoscheit's head as opposed to his neck. A scuffle ensued, during which Viterna continued to try to subdue Hoscheit and was hit by Hoscheit in the process. Given Viterna's observation of Hoscheit handling the machete when he pulled into the driveway and Hoscheit's aggressive behavior, Viterna's attempt to subdue Hoscheit was reasonable. The evidence does not support an inference that Hoscheit had a reasonable and good faith belief in the necessity of using force to defend himself against Viterna or that Viterna used unreasonable force in attempting to subdue Hoscheit so that he could pursue his investigation of the automobile accident. Because there was no evidence to support a claim of self-defense in this case, the district court did not err in refusing to give the requested instruction.

2. SUFFICIENCY OF EVIDENCE

Hoscheit asserts that the evidence was insufficient to convict him on each of the charges.

(a) Third Degree Assault on Officer

A person commits the offense of third degree assault on an officer if he or she intentionally, knowingly, or recklessly causes bodily injury to a peace officer, and the offense is committed while such officer is engaged in the performance of his or her official duties. § 28-931; *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015). Under Neb. Rev. Stat. § 28-109(4) (Reissue 2016), "[b]odily injury" is defined to mean "physical pain, illness, or any impairment of physical condition."

Hoscheit does not dispute that Viterna suffered bodily injury as a result of being hit by Hoscheit; rather, he argues that Viterna's injuries were not "intentionally, knowingly, or recklessly" caused by him because Viterna "was the initial aggressor, escalated the situation by placing his hand on his firearm, and refused [Hoscheit's] lawful request for . . . Viterna to leave his property." Brief for appellant at 13.

The evidence shows that Viterna arrived at Hoscheit's residence in his patrol vehicle, in uniform, to carry out an investigation as part of his official duties with the Nebraska State Patrol. Hoscheit handled a sheathed machete, returned the machete to a vehicle, and then moved aggressively toward Viterna, while cursing and yelling. Viterna struck Hoscheit in an attempt to defuse the situation, and Hoscheit subsequently struck Viterna. Hoscheit does not deny that he hit Viterna or argue that Viterna's injuries were not as described by Viterna's testimony and the photographs admitted into evidence. Viterna testified that Hoscheit struck him in the left cheek,

below his eye, and that he experienced some minor swelling and redness. Hospital personnel told Viterna to treat the injury with ibuprofen and ice if needed. Although Hoscheit criticizes Viterna for refusing to leave the property and placing his hand on his gun, the evidence shows that there was more to the situation than reflected in Hoscheit's brief. Viterna's conduct has to be considered not just in light of Hoscheit's yelled demands, but also in light of Hoscheit's handling of the machete as Viterna drove up and Viterna's aggressive posturing and hostile, verbal barrage, which impeded Viterna's ability to conduct his investigation. To the extent Hoscheit is relying on his argument that he was acting in self-defense, as discussed above, an instruction of self-defense was not warranted by the evidence. And, the jury, which was instructed on defense of property, determined that Hoscheit was not acting in defense of his property when he struck Viterna. Even if Hoscheit did not intentionally or knowingly cause Viterna's injuries, the evidence supports a conclusion that Viterna's aggressive actions constituted reckless conduct that resulted in bodily injury to Viterna.

Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. See *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019). The evidence was sufficient to support Hoscheit's conviction for third degree assault on an officer.

### (b) Resisting Arrest

Hoscheit was convicted of resisting arrest in violation of § 28-904(1), which provides:

A person commits the offense of resisting arrest if, while intentionally preventing or attempting to prevent a peace officer, acting under color of his or her official authority, from effecting an arrest of the actor or another, he or she:

(a) Uses or threatens to use physical force or violence against the peace officer or another; or

(b) Uses any other means which creates a substantial risk of causing physical injury to the peace officer or another; or

(c) Employs means requiring substantial force to overcome resistance to effecting the arrest.

An arrest is taking custody of another person for the purpose of holding or detaining him or her to answer a criminal charge, and to effect an arrest, there must be actual or constructive seizure or detention of the person arrested. *State v. Heath*, 21 Neb. App. 141, 838 N.W.2d 4 (2013). See, also, *State v. Armagost*, 291 Neb. 117, 864 N.W.2d 417 (2015).

Hoscheit argues that the evidence in this case was insufficient because the video offered into evidence showed that he retreated to his residence after the confrontation with Viterna and that he proceeded to repeatedly ask whether he was under arrest before law enforcement eventually gained entry and arrested him. His arguments ignore the evidence that he physically resisted attempts by law enforcement to handcuff and arrest him once he had entered the residence and after he was told that he was under arrest. In his testimony, Viterna described officers' attempts to gain control of Hoscheit, who continued to resist and kick at them after they had taken him down to the ground and before he was handcuffed. Eberhardt further detailed the struggle that required four officers to handcuff Hoscheit. Also, the jury heard audio of the encounter from the video

recording, including confirmation that Hoscheit was under arrest prior to the officers trying to handcuff and subdue him. The evidence was sufficient to show that Hoscheit resisted arrest. See *State v. Campbell*, 260 Neb. 1021, 620 N.W.2d 750 (2001) (evidence sufficient to support conviction for resisting arrest where defendant resisted handcuffing and struggled with officers after being informed she was under arrest).

Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. See *State v. Thomas, supra*. The evidence was sufficient to support Hoscheit's conviction for resisting arrest.

(c) Obstructing Peace Officer

Hoscheit was convicted of obstructing a peace officer pursuant to § 28-906(1), which provides:

> A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders (a) the enforcement of the penal law or the preservation of the peace by a peace officer or judge acting under color of his or her official authority or (b) a police animal assisting a peace officer acting pursuant to the peace officer's official authority.

The mere verbal refusal to provide information to an officer does not constitute an obstacle to the enforcement of the penal laws as contemplated by § 28-906. *State v. Owen*, 7 Neb. App. 153, 580 N.W.2d 566 (1998). There must be some sort of affirmative physical act, or threat thereof, for the offense of obstructing a peace officer to occur. *State v. Ellingson*, 13 Neb. App. 931, 703 N.W.2d 273 (2005).

Hoscheit argues that he could not have been found guilty of obstructing a peace officer because there was no evidence that he intentionally obstructed, impaired, or hindered Viterna's investigation. We disagree. While Hoscheit focuses on his refusal to answer Viterna's questions in relation to the traffic accident investigation and his demands that Viterna leave his property, these actions are not what exposed Hoscheit to penalty under § 28-906(1). As Viterna drove up to the property, he observed two women relevant to his traffic investigation and Hoscheit exit a vehicle. He then saw the two women move quickly into the house and Hoscheit retrieve a machete from the vehicle and attempt to unsheathe it before placing it back into the vehicle. Once Viterna exited his patrol vehicle, Hoscheit approached him in close proximity and began swearing and yelling at Viterna to take his hand off of his gun and leave the property. Hoscheit continued his barrage of yelling and cursing as Viterna attempted to inquire about speaking with the driver involved in the traffic accident. Hoscheit's conduct, body language, and communication represented the use or threat to use violence, force, physical interference, or obstacle, which intentionally obstructed, impaired, or hindered Viterna's ability to investigate the traffic accident. Further, Hoscheit's conduct relevant to the obstruction charge is not restricted to his initial interaction with Viterna in the driveway. The testimony and recordings show that after entering the residence, Hoscheit warned that he would resist arrest and that he proceeded to do so by physically struggling with officers and resisting restraint to the point that it required four officers to subdue him. These actions were also sufficient to sustain the charge of obstruction. See *State v. Campbell*, 260 Neb. 1021, 620 N.W.2d 750 (2001) (evidence showing that defendant resisted

handcuffing, struggled with officer, and continued to resist restraint are alone sufficient to sustain conviction for obstructing peace officer).

The evidence presented at trial was sufficient to convict Hoscheit of obstructing a peace officer.

### (d) Disobeying Patrol Officer

Hoscheit was convicted of violating § 81-2008, which states, "Any person who fails or refuses to obey any lawful traffic direction or any lawful order of the superintendent or any of the subordinate officers or employees of the Nebraska State Patrol . . . shall be deemed guilty of a Class III misdemeanor."

Hoscheit does not dispute that Viterna was an employee of the Nebraska State Patrol or that he disobeyed Viterna's order telling him to get on the ground. Rather, he argues that since Viterna "had just punched [Hoscheit], refused to leave his property, and would not take his hand off his gun," the order was not lawful under the circumstances. Brief for appellant at 12.

The evidence shows that Viterna received information from dispatch that the driver of a vehicle involved in the traffic accident he was investigating might be located at Hoscheit's residence. In approaching the residence, Viterna observed Hoscheit, together with both the female driver and the female owner of the vehicle relevant to his traffic investigation. The women entered the residence, but Viterna observed Hoscheit retrieve a sheathed machete from the vehicle the three had just exited. After Hoscheit returned the machete to the vehicle, he moved quickly toward Viterna, yelling and cursing, and aggressively interrupting Viterna's inquiry about the machete, as well as his attempts to inquire about speaking with the driver involved in the traffic accident. Viterna unsuccessfully attempted to defuse the situation by delivering a brachial strike that ended up being delivered to the side of Hoscheit's head rather than his neck due to "the fluidity of the incident." Hoscheit hit Viterna in the face during the ensuing struggle, and Viterna's order for Hoscheit to get on the ground was given subsequent to that offense. Viterna testified that he was instructing Hoscheit to get on the ground because he was under arrest and that Hoscheit continued to yell and ignore orders, rather than complying with Viterna's order.

With respect to Hoscheit's contention that Viterna's order was unlawful, we note that Neb. Rev. Stat. § 81-2005 (Reissue 2014) gives officers of the State Patrol the powers to enforce "the Nebraska Rules of the Road, and any other law regulating the registration or operation of vehicles or the use of the highways," to "make arrests upon view and without warrant for any violation committed in their presence of any provision of the laws of the state relating to misdemeanors or felonies," and to "investigate traffic accidents for the purpose of . . . enforcing motor vehicle and highway safety laws," among other powers. As discussed further in other argument sections of this opinion, the evidence was sufficient to support Hoscheit's convictions for third degree assault on an officer, resisting arrest, and obstructing a peace officer. And, Viterna's actions in placing his hand on his gun, inquiring about the machete, and attempting to subdue Hoscheit were reasonable and lawful given Hoscheit's behavior and Viterna's concerns about officer safety.

We conclude that the evidence was sufficient to support a finding that Viterna's order was lawful and that Hoscheit refused to obey that lawful order. Accordingly, the evidence was sufficient to support a conviction for failure to obey a lawful order of the State Patrol.

- 10 -

### 3. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Hoscheit asserts that he received ineffective assistance of trial counsel in various regards. He is represented on direct appeal by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Id.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit, or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019). An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019).

To raise a claim on direct appeal that trial counsel was ineffective, a defendant's brief must specifically set forth how counsel's performance was deficient, but it need not also allege prejudice. *State v. Stelly, supra*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *State v. Sundquist, supra*. An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Stelly, supra*. The record on direct appeal is sufficient to review a claim of ineffective assistance if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Stelly, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Munoz*, 303 Neb. 69, 927 N.W.2d 25 (2019). The two prongs of this test may be addressed in either order, and the entire ineffective assistance analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019).

Hoscheit specifically argues that his trial counsel was ineffective for not (a) allowing him to testify, (b) calling other witnesses Hoscheit wanted to call in his favor, (c) subpoenaing phone calls made by Hoscheit to the Pierce County Sheriff's Department, and (d) presenting enough evidence to justify a self-defense jury instruction.

### (a) Right to Testify

Hoscheit argues that he wanted to testify in his defense but that his attorney did not allow him to do so. A defendant has a fundamental constitutional right to testify. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). The right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone. *Id.*

Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make. *Id.* Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance of counsel in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable. *Id.*

Hoscheit does not argue that he was not informed of his right to testify; rather, he argues that he wanted to testify and that his attorney prevented him from doing so. In arguing that his trial counsel interfered with his freedom to testify, Hoscheit notes that his attorney did not present any evidence in his defense and only presented a few photographs pulled from the video of the encounter in question during cross-examination of Viterna. He suggests that because his attorney did not subpoena any of the phone calls made to dispatch or present testimony from "the other two witnesses at the scene, the jury "only heard one version of events." Brief for appellant at 16. Hoscheit argues that, if he had been allowed to testify, "it is very possible that the testimony he provided would be enough to place reasonable doubt in the mind of the jurors." Brief for appellant at 16. Hoscheit did not waive his right to testify on the record, and the record does not reveal the details of any discussion between him and his attorney on this issue. We conclude that the record is insufficient to address this claim on direct appeal.

### (b) Failure to Call Witnesses

Hoscheit argues that he wanted to call witnesses on his behalf and that his attorney did not call "the other two witnesses at the scene." Brief for appellant at 16. Although he does not identify by name the witnesses he wanted to call, presumably Hoscheit wanted his attorney to call the two women who were on the premises during the encounter between Hoscheit and Viterna to present their version of the incident. However, other than stating in another of his arguments that the jury "only heard one version of events," Hoscheit does not detail the nature the testimony of the witnesses he wanted his attorney to call or otherwise identify them. *Id.*

In *State v. Abdullah*, 289 Neb. 123, 133, 853 N.W.2d 858, 867 (2014), the Nebraska Supreme Court stated:

> Our case law is clear that were this a motion for postconviction relief, Abdullah would be required to specifically allege what the testimony of these witnesses would have been if they had been called in order to avoid dismissal without an evidentiary hearing. Without such specific allegations, the postconviction court would effectively be asked to "'conduct

a discovery hearing to determine if anywhere in this wide world there is some evidence favorable to defendant's position.'"

However, *Abdullah* goes on to state:

> In a direct appeal, we do not need specific factual allegations as to who should have been called or what that person or persons would have said to be able to conclude that any evidence of such alleged ineffective assistance will not be found in the trial record. Nevertheless, we are concerned with the lack of any specificity as to who those uncalled witnesses were from the standpoint of a potential postconviction court's ability to identify if a particular failure to call a witness claim is the same one that was raised on direct appeal.

*State v. Abdullah*, 289 Neb. at 133-34, 853 N.W.2d at 867. The Supreme Court found that the defendant's vague assertion referring to "'at least two' witnesses" was "little more than a placeholder." The Supreme Court concluded that the defendant failed to make sufficiently specific allegations of deficient conduct relating to the alleged failure to call witnesses. See, also, *State v. Lee*, 304 Neb. 252, 282, 934 N.W.2d 145, 166 (2019) (appellate counsel must give on direct appeal names or descriptions of uncalled witnesses forming basis of claim of ineffective assistance, otherwise, potential postconviction court would be unable to identify whether claim based on alleged failure to call particular witness was preserved on direct appeal; failure to call named witness raised with sufficient specificity, claims concerning "adverse witnesses" not been preserved); *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017) (defendant alleged attorney should have called as character witnesses individuals he worked with and friends and relatives who had seen him with victim prior to allegations; defendant's descriptions were too broad and indefinite to raise and preserve his allegations of deficient conduct).

Here, unlike in *Abdullah*, *Mora*, and *Lee* (claim as to "adverse witnesses") above, Hoscheit has sufficiently identified the uncalled witnesses as the two individuals who were at the scene at the time of his altercation with the officers. Although the substance of their testimony is not set forth in his assignment of error or argument, given that this case was briefed pre-*Mrza*, the allegations of deficient performance are sufficiently pled. See *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). However, the record on appeal is insufficient to address this claim of ineffective assistance of counsel.

### (c) Failure to Produce Mitigating Evidence

Hoscheit argues that he wanted to subpoena his phone calls made to the Pierce County Sheriff's Department (presumably some of the calls made to dispatch referenced in Viterna's testimony) as mitigating evidence and "further evidence that he was not trying to commit any of the offenses charged." Brief for appellant at 16. He argues that his attorney was ineffective because this "mitigating evidence was neither sought nor offered as evidence" at trial. *Id.* The decision by Hoscheit's attorney not to offer this evidence involves issues of trial strategy, and the record is insufficient to address this claim on direct appeal.

### (d) Evidence of Self-Defense

We have determined above that the evidence presented at trial did not support a jury instruction on self-defense. Hoscheit argues that his attorney should have provided more evidence to justify the requested self-defense instruction. Again, Hoscheit does not allege with any specificity what additional evidence his attorney should have presented to support his self-defense assertion. We conclude Hoscheit has failed to allege this claim of deficient performance with sufficient particularity. See *State v. Mora, supra*.

## VI. CONCLUSION

The district court did not err in refusing to give the requested self-defense jury instruction. The evidence was sufficient to support Hoscheit's convictions. Except for Hoscheit's claim that his attorney should have provided more evidence to justify the requested self-defense instruction, which he failed to sufficiently plead, the record is insufficient to address Hoscheit's other claims of ineffective assistance of trial counsel on direct appeal.

AFFIRMED.